## 76745. McKEOWN v. THE STATE.
(371 SE2d 243)

DEEN, Presiding Judge.

The appellant, Timothy McKeown, was convicted of driving under the combined influence of alcohol and a drug. On appeal, McKeown contends that the trial court erred in admitting into evidence the results of a urine test and in failing to charge the jury on the law of circumstantial evidence.

At the trial, Officer Stephen Foster of the DeKalb County Police Department testified that on February 8, 1987, at approximately 1:15 a.m., he observed McKeown drive his car at a high rate of speed on Memorial Drive, make a sudden turn onto another road, and then make a sudden turn into a private driveway. The officer followed McKeown after the sudden turn onto the road, and had to brake abruptly to avoid striking McKeown's vehicle when the latter turned into the driveway. The officer stopped McKeown after the latter had exited his vehicle and started walking away hurriedly, and observed that McKeown was unsteady on his feet, had a strong odor of alcohol about him, and had glassy, bloodshot eyes. After McKeown unsatisfactorily performed three field sobriety evaluations, the officer placed him under arrest for driving under the influence, and advised him of his implied consent rights. McKeown agreed to a breath test, which was administered shortly afterwards at a nearby police station and revealed a blood alcohol content of .04 grams percent.

Because McKeown's impairment was far greater than a blood alcohol content of .04 grams percent would normally indicate, the officer again advised McKeown of his implied consent rights and requested that he submit to blood and urine tests. McKeown consented in writing to the blood and urine tests, and also requested another breath test. Blood and urine samples were obtained, followed by the requested second breath test, which indicated a blood alcohol content of .03 grams percent. The urinalysis subsequently performed by the

forensic laboratory revealed the presence of marijuana and/or its metabolites. The blood analysis indicated an alcohol content of .04 grams percent; not enough blood was obtained to perform a test for the presence of any drug in the blood. *Held*:

1. McKeown contends that the trial court erred in admitting into evidence the results of the urinalysis, on the grounds that (1) the police officer had failed to inform McKeown of his implied consent rights separately before each blood and urine test, and (2) obtaining the urine sample was an unreasonable search and seizure under the Fourth Amendment. We find no merit to either contention.

OCGA § 40-5-55 (a) provides that "any person who operates a motor vehicle upon the highways or elsewhere throughout this state shall be deemed to have given consent, subject to Code Section 40-6-392, to a chemical test or tests of his blood, breath, or urine or other bodily substances, for the purpose of determining the alcoholic or drug content of his blood if arrested for any offense arising out of acts alleged to have been committed in violation of Code Section 40-6-391. The test or tests shall be administered at the request of a law enforcement officer . . . ." OCGA § 40-6-392 (a) (4) provides that "[u]pon the request of the person who shall submit to a chemical test or tests at the request of a law enforcement officer, full information concerning the test or tests shall be made available to him or his attorney. The arresting officer at the time of arrest shall advise the person arrested of his rights to a chemical test or tests according to this Code section . . . ." Nothing in this statutory scheme prohibits an officer from advising a person of his implied consent rights and requesting multiple tests at one time.

McKeown claims that the police officer's request for additional tests violated the Fourth Amendment as an unreasonable attempt to "shop" through his bodily fluids in search of evidence. The police officer's requests were authorized by OCGA §§ 40-5-55 and 40-6-392, and were not unreasonable; the same statutory scheme also allowed McKeown to refuse to submit to these tests, and he was informed of that right of refusal. See generally *Allen v. State*, 254 Ga. 433 (330 SE2d 588) (1985). If McKeown had been concerned about such a "shopping" spree, he could have prevented it simply by refusing the tests.

2. At trial the arresting officer testified that he had observed McKeown proceed east-bound on Memorial Drive and make a sudden left turn onto another road; on cross-examination, defense counsel brought out the fact that on the police report the officer had indicated that McKeown was travelling west-bound on Memorial Drive and made a sudden right turn onto the other road. McKeown contends that this discrepancy impeached the officer's entire testimony, which was the only direct evidence of McKeown's impairment, and

thus rendered reversible error the trial court's refusal to instruct the jury on when circumstantial evidence alone may support a conviction. *Stanley v. State*, 239 Ga. 260 (236 SE2d 611) (1977). However, this minor and immaterial discrepancy between the report and the memory of the officer certainly did not impeach his entire testimony. Since there was the direct evidence provided by the officer's testimony, as well as the other direct evidence in the case, it was not error to refuse to give the requested jury instruction on circumstantial evidence. *Galloway v. State*, 165 Ga. App. 536 (301 SE2d 894) (1983).

*Judgment affirmed. Sognier, J., concurs. Carley, J., concurs in Division 2 and in judgment.*

DECIDED JUNE 29, 1988.

*W. Steven Harrell*, for appellant.

*Ralph T. Bowden, Jr., Solicitor, N. Jackson Cotney, Jr., Ann M. Elmore, Assistant Solicitors*, for appellee.