## A96A1908. THE STATE v. O'DONNELL.
(484 SE2d 313)

POPE, Presiding Judge.

Defendant Scott O'Donnell was indicted for driving under the influence of alcohol (OCGA § 40-6-391), leaving the scene of an accident (OCGA § 40-6-270), and causing serious injury by vehicle (OCGA § 40-6-394). The trial court granted defendant's motions to suppress or exclude (1) his statement to Officer Moore that he had had several drinks, (2) the results of defendant's field sobriety tests, and (3) the results of his breath test. The trial court properly sup-

pressed the statement and the field test results because the officer failed to inform defendant of his right not to incriminate himself ("his *Miranda* rights"), and properly excluded the breath test results because the implied consent warning the officer gave defendant prior to the test was not correct. Accordingly, we affirm.

At approximately 4:00 a.m. on April 30, 1994, defendant was involved in an accident in which a person in another vehicle was seriously injured. Defendant left the scene, and was almost immediately involved in a second accident. He was arrested at the scene of the second accident and returned in the back of a police car to the scene of the first. There, Officer Moore talked to him. The officer told defendant he smelled alcohol and asked defendant if he had been drinking. Defendant said yes, he had had several drinks, but not since 8:00 the prior evening. Officer Moore then asked defendant to get out of the car and perform several field sobriety tests, which he did. The State stipulated that defendant was in custody and under arrest when Officer Moore talked with him, but neither Moore nor any other officer told defendant about his rights under *Miranda*.

Officer Moore also gave defendant a breath test. Prior to giving defendant the test, Moore read him an implied consent warning; but it was a version of the warning we have rejected as inadequate because it did not inform defendant that he had the right to have another test done by a qualified person of his own choosing. *State v. Causey*, 215 Ga. App. 85, 86 (449 SE2d 639) (1994). In the State's proffer of evidence, the officer acknowledged he did not give the correct warning at the proper time, but said that after he gave defendant the breath test, he asked defendant if he wanted another test of his own choosing.

1. The State first argues that the trial court erred in suppressing defendant's statement and the results of the field sobriety tests because *Miranda* warnings are not necessary in the context of an initial on-site investigation of a traffic incident. We have indeed held that *Miranda* warnings generally are not necessary for roadside questioning during the routine investigation of a traffic incident. See, e.g., *Daugherty v. State*, 182 Ga. App. 730, 731 (2) (356 SE2d 902) (1987). But this is because a reasonable person questioned during this type of investigation would consider his detention only temporary. See *Hughes v. State*, 259 Ga. 227, 228 (1) (378 SE2d 853) (1989). Thus, *Miranda* warnings generally are not necessary during the initial on-site investigation because the detainees generally are not in custody or under arrest. See *Coates v. State*, 216 Ga. App. 93, 95 (7) (453 SE2d 35) (1994); *Crum v. State*, 194 Ga. App. 271, 272 (390 SE2d 295) (1990); *Montgomery v. State*, 174 Ga. App. 95 (1) (329 SE2d 166) (1985). Unlike most cases involving this issue, however, it is undisputed in this case that defendant *was* under arrest when

Officer Moore questioned him and had him perform field sobriety tests; and where a defendant is under arrest, a *Miranda* warning must be given regardless of whether the questioning occurs in the context of a routine investigation of a traffic incident. See *Lebrun v. State*, 255 Ga. 406, 407 (3) (339 SE2d 227) (1986).

2. The State further argues that even if failure to give the *Miranda* warning precludes use of the custodial statement Officer Moore elicited from defendant, it should not render the circumstances and results of the field sobriety tests inadmissible. In *Hughes v. State*, the Supreme Court of Georgia held that the results of field sobriety tests given without the benefit of *Miranda* warnings need not be excluded under the Fifth Amendment to the United States Constitution, as the results of such tests are not evidence of a testimonial or communicative nature. 259 Ga. at 228 (2) (b). The Supreme Court in *Hughes* explicitly left open the possibility that the results of sobriety tests given without *Miranda* warnings might nonetheless be inadmissible under OCGA § 24-9-20 (a), however, noting that the defendant in *Hughes* based his motion only on federal law, and not on the Georgia statute. Id. at 228.

Defendant in this case *does* rely on OCGA § 24-9-20 (a); and field sobriety tests given to a person under arrest, without giving him or her a *Miranda* warning first, are inadmissible under this Code section. See *Montgomery*, 174 Ga. App. at 95 (1). In *Montgomery*, we stated that OCGA § 24-9-20 (a) "is more protective of the individual's right than the Fifth Amendment, which covers only a defendant's statements, since the Georgia statute has been construed to limit the State from forcing an individual to present *evidence*, testimonial or real." Id. at 96 (1), citing *Creamer v. State*, 229 Ga. 511 (3) (192 SE2d 350) (1972). This statement in *Montgomery* was dicta, since we held that the statute did not apply because the defendant in that case had not yet been arrested at the time he took the sobriety tests. But the reasoning is nonetheless persuasive, based on the Supreme Court of Georgia's holding in *Creamer v. State*: Under the constitutional and statutory law of Georgia, which "has long granted more protection to its citizens than has the United States," *Creamer*, 229 Ga. at 515 (3), an arrestee may not be compelled to do an act which is incriminating, but he may be compelled to submit to acts by others (i.e., fingerprinting, identification). Id. at 516-518 (applying this standard, the Supreme Court held in *Creamer* that the defendant could be compelled to submit to a surgical operation to have a bullet removed from his body). We applied the *Creamer* standard in *State v. Armstead*, 152 Ga. App. 56 (1), 57 (2) (262 SE2d 233) (1979), holding that even though a defendant can be compelled to give a handwriting sample under the Fifth Amendment, he cannot be compelled to do so under Georgia law, since a handwriting sample requires the defendant to

do an act rather than submit to an act. Like providing a handwriting sample, performing field sobriety tests requires a defendant to act rather than submit to acts. Thus, an arrestee must be warned of his right against self-incrimination before he is asked to take these tests.

In almost all cases involving motions to suppress field sobriety tests, we have not needed to address this question because we have determined that the detainee had not been arrested when he performed the field sobriety tests. See, e.g., *Crum*, 194 Ga. App. at 272. But in the one case where, as here, the defendant had clearly been arrested at the time he took the tests, we affirmed the trial court's grant of the defendant's motion to suppress based on the officer's failure to warn him of his rights. See *State v. Whitfield*, 214 Ga. App. 574 (3) (448 SE2d 492) (1994).

We note that in *Smith v. State*, 202 Ga. App. 701, 702 (1) (415 SE2d 495) (1992), we stated that field sobriety tests were not inadmissible under the Fifth Amendment, and went on to say that "[t]here is no reason this holding should not extend to a claim of violation of OCGA § 24-9-20." In *Smith*, we relied on *Classic Art Corp. v. State*, 245 Ga. 448 (265 SE2d 577) (1980), in which the Supreme Court of Georgia said that the applicability of OCGA § 24-9-20 is governed by the same standards as the Fifth Amendment, rather than on *Montgomery*, *Creamer*, and *Armstead*. But this reliance was misplaced, as *Classic Art* did not address the issue involved in *Creamer* and in this case: Is a particular type of evidence covered by the prohibition against compelled self-incrimination? Instead, *Classic Art* involved the question of whether a corporation, rather than an individual, can avail itself of the privilege against self-incrimination (the answer to which is "no" under both federal and state law). The language quoted from *Smith* above was unnecessary, since we had already concluded that the defendant was not in custody when he took the sobriety tests. In order to avoid confusion in this area of the law, however, this language indicating that field sobriety tests performed by an arrestee without a warning would be admissible under OCGA § 24-9-20 is disapproved.

3. The State also contends that since the officer asked defendant after his breath test whether he wanted another test of his own choosing, the officer substantially complied with the requirements of OCGA §§ 40-5-67.1 & 40-6-392, and the breath test should be admitted. But substantial compliance with these Code sections is not sufficient. The officer must give the correct warning, see *State v. Causey*, 215 Ga. App. 85, and he must give it when he arrests the defendant for DUI unless there are good reasons not to. *Perano v. State*, 250 Ga. 704, 708 (300 SE2d 668) (1983); *Clapsaddle v. State*, 208 Ga. App. 840, 841 (1) (432 SE2d 262) (1993). As the officer in this case did not give the correct warning at the time of arrest and the circumstances

did not warrant a delay, the trial court properly ruled that the results of the breath test were inadmissible.

*Judgment affirmed. Andrews, C. J., McMurray, P. J., Birdsong, P. J., Beasley, Johnson, Blackburn, Smith and Ruffin, JJ., concur.*

DECIDED MARCH 17, 1997.

*Lewis R. Slaton, District Attorney, Carl P. Greenberg, Charles E. Rooks, Jeffrey J. Connor, Assistant District Attorneys*, for appellant.

*Germano, Kimmey & Cheatwood, John L. Kimmey III*, for appellee.