## S97A0611. FANTASIA v. THE STATE.
### (491 SE2d 318)

HUNSTEIN, Justice.

Vincent Fantasia was convicted of driving under the influence with an unlawful blood alcohol level. After his arrest, Fantasia submitted to a State-administered breath test on an Intoxilyzer 5000 breath-testing machine which registered a .134 blood alcohol concentration. At trial, the court admitted into evidence certificates of inspection for the Intoxilyzer 5000 certifying that the breath-testing device was in good working order with all of its electronic and operating components properly attached. See OCGA § 40-6-392 (a) (1) (A). The trial court also admitted the results of Fantasia's breath test.

Fantasia appeals to this Court raising, inter alia, constitutional challenges to OCGA § 40-6-392 (f) (authorizing as self-authenticating the admission of inspection certificates on breath-testing devices) and OCGA § 40-6-392 (d) (holding admissible at trial the refusal of a defendant to permit a chemical analysis to be made of his blood, breath, urine or other bodily substance). Finding no constitutional infirmity in the challenged statutes or error in the remaining enumerations, we affirm.

1. Fantasia's constitutional challenge of OCGA § 40-6-392 (f) has been decided adversely to him and is controlled by this Court's recent decision in *Brown v. State*, 268 Ga. 76 (485 SE2d 486) (1997).

2. Under Georgia law, a person suspected of driving under the influence who is asked to submit to a State-administered breath test has the right to refuse the test, see OCGA § 40-5-67.1 (d); by law, police must inform the suspect of his right to refuse. Id. at (b). Should a suspect refuse to submit to the test, however, the Department of Public Safety may suspend the suspect's driver's license for a minimum of one year, OCGA § 40-5-67.1 (d), and the refusal to submit to a breath test may be admitted into evidence against the suspect at trial. OCGA § 40-6-392 (d). Fantasia enumerates as error the admission of his breath-test results on the ground that OCGA § 40-6-392 (d) violates his State constitutional right against self-incrimination. See Art. I, Sec. I, Par. XVI of the Georgia Constitution of 1983. He contends that the statutory scheme of allowing a suspect to choose between either submitting to the breath test or refusing to submit to the breath test and then having the refusal admitted into evidence at trial presents no real choice and is the equivalent of compelling a person to perform an act to incriminate himself.[1]

Article I, Section I, Paragraph XVI of the Georgia Constitution provides that "[n]o person shall be compelled to give testimony tending in any manner to be self-incriminating." Similar to the right against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution, Georgia's right against self-incrimination is directed towards prohibiting the State's use of coercion or compulsion to be a witness against oneself. Therefore, if there is no State coercion or compulsion, an individual's right against self-incrimination is not implicated. See *South Dakota v. Neville*, 459 U. S. 553, 562, 564 (I) (103 SC 916, 74 LE2d 748) (1983); accord *Allen v. State*, 254 Ga. 433 (1) (a) (330 SE2d 588) (1985).

In *Keenan v. State*, 263 Ga. 569 (1) (436 SE2d 475) (1993), this Court upheld the validity of OCGA § 40-6-392 (d) in the face of Kee-

---

[1] Based on this position, Fantasia also asserts that OCGA § 40-5-67.1 (b),. which requires the arresting officer to inform a suspect of the consequence of refusing to submit to testing, must likewise be ruled unconstitutional.

nan's challenge that the admission at trial of evidence of his refusal to take a State-administered breath test violated his right against self-incrimination. Citing *Allen v. State*, supra, 254 Ga. at 434 (1) (a), we stated:

> In Georgia, the [S]tate may constitutionally take a blood sample from a defendant without his consent. [Cit.] Our "Implied Consent Statute" ([cit.]) thus grants a suspect an opportunity, not afforded him by our constitution, to refuse to take a blood-alcohol test. [The statute] grant[s], rather than den[ies], a right to a defendant. We agree with the United States Supreme Court's view that neither choice afforded a defendant is "so painful, dangerous, or severe, or so violative of religious beliefs" that no choice actually exists. [*South Dakota v. Neville*, supra.] We thus find no compulsion on behalf of the [S]tate and no violation of due process. . . . [Cit.]

We see no reason to distinguish a suspect's refusal to submit to a breath test, which we held in *Keenan* was not compelled by the State, from a suspect's submission to a breath test. In either case, the suspect has a choice which does not infringe upon his right against self-incrimination. As the United States Supreme Court stated in *Neville*, supra, 459 U. S. at 564, the choice to submit or refuse to submit to the analysis of one's blood, breath, urine or other bodily substance will not be an easy or pleasant one to make, "[b]ut the criminal process often requires suspects and defendants to make difficult choices." Because Fantasia was not compelled by the State to submit to the breath test, the admission at trial of the test results was not error.

3. In his third enumeration of error, Fantasia claims the trial court erred in admitting into evidence, over his best evidence objection, photocopies of the certificates of inspection rather than the originals. At the time the certificates were moved into evidence, the assistant district attorney informed the trial court that it is the practice of his office to make photocopies of the original certificates because there is only one original certificate for each inspection performed. Therefore, he explained, the State is not able to submit into evidence original certificates at every trial for which the certificates are required. Although disputed by Fantasia, the district attorney also stated to the trial court that the original certificates were produced to Fantasia for his review at a previous hearing on Fantasia's motions to suppress.

OCGA § 24-5-4 (a) requires that "[t]he best evidence which exists of a writing sought to be proved shall be produced, unless its absence shall be satisfactorily accounted for." Here the originals were

accounted for and there is no evidence that the photocopies were not exact duplicates of the original certificates. Under these facts, the trial court did not abuse its discretion in admitting photocopies of the certificates of inspection. See *Spead v. State*, 187 Ga. App. 359 (2) (370 SE2d 213) (1988); *Knox v. State*, 165 Ga. App. 26 (2) (299 SE2d 105) (1983) (not abuse of discretion to admit copies of alleged forged checks where State accounted for absence of originals).

4. The question of whether a certificate of inspection is a scientific report required to be produced by the State to a defendant before trial pursuant to OCGA § 17-16-23 has been resolved adversely to Fantasia. See *Harmon v. State*, 224 Ga. App. 890 (3) (482 SE2d 730) (1997).

*Judgment affirmed. All the Justices concur, except Sears and Carley, JJ., who concur in the judgment only as to Division 2.*

DECIDED SEPTEMBER 15, 1997 —
RECONSIDERATION DENIED OCTOBER 31, 1997.

*The Chestney Law Firm, Robert W. Chestney, Michael M. Hawkins,* for appellant.

*Ralph T. Bowden, Jr., Solicitor, W. Cliff Howard, Michael D. Johnson, Charles C. Flinn, Assistant Solicitors,* for appellee.

*Thurbert E. Baker, Attorney General, Carol A. Callaway, Assistant Attorney General, Kenneth W. Mauldin, Solicitor, Clarke County,* amici curiae.