A97A1855. THE STATE v. WARMACK.
(495 SE2d 632)

Judge Harold R. Banke.

After Officer John Helton stopped Walter C. Warmack for making an illegal right turn, he suspected that Warmack had been driving under the influence. Helton obtained a positive reading on the alcosensor, and Warmack failed several field sobriety tests. Helton testified that Warmack was unable to count to 30, could not stand on one leg and lost his balance when attempting the walk and turn test. Helton placed him under arrest for DUI and advised him of his implied consent rights. At the police station, Helton administered the Intoxilyzer 5000 test which resulted in readings of .064 and .058. Later, based on the apparent inconsistency between the field sobriety test results and the breath test results, and believing that Warmack might be under the influence of prescription medication or illegal drugs, Helton reread the implied consent warning and asked Warmack to consent to State-administered blood and urine tests. After initially agreeing, Warmack became angry, changed his mind, and refused further testing.

The trial court granted Warmack's motion in limine to suppress any mention at his DUI trial of his refusal to submit to additional

State testing. The trial court noted, "they requested a test; they got a test. I don't think they can continue to request tests." The State appeals. *Held*:

We reject the State's contention that the trial court erred in precluding it from introducing evidence of Warmack's in-custody refusal to submit to State-requested blood and urine tests after taking the requested breath test. OCGA § 40-5-67.1, when read in pari materia with §§ 40-5-55 and 40-6-392, authorizes a law enforcement officer to designate the appropriate chemical test to be administered — breath, blood, urine, or other bodily substance — for the detection of the source of impairment as suspected by the officer. *Jordan v. State*, 223 Ga. App. 176, 182 (2) (477 SE2d 583) (1996). The legislature provided that "[s]ubject to Code Section 40-6-392, the requesting law enforcement officer shall designate which test shall be administered, provided that the officer shall require a breath test or a blood test and may require a urine test." OCGA § 40-5-67.1 (a). The plain statutory language authorizes the requesting official to select a breath test and a urine test or a blood test and a urine test.

In this case, the officer chose and designated only a breath test as the test to be administered. Nothing in the statutory scheme authorizes the State to require, as opposed to request, additional testing after the officer selects a breath test. See *McKeown v. State*, 187 Ga. App. 685, 686 (1) (371 SE2d 243) (1988) (physical precedent only) (after advising of implied consent rights, arresting officer may at that time request multiple tests); compare *Turner v. State*, 199 Ga. App. 466 (405 SE2d 296) (1991) (State cannot refuse defendant's request for more than one test). Once the arresting officer designates the test, the statute provides no authority for making another selection when the officer becomes dissatisfied with the results of the State test. As noted in *McKeown*, however, a defendant has a right to refuse subsequent tests.

As a general rule, no *Miranda* warnings are required while the investigating officer conducts preliminary questioning or field sobriety tests or advises a defendant of his right to an independent test. See *Keenan v. State*, 263 Ga. 569, 572 (2) (436 SE2d 475) (1993); *State v. Whitfield*, 214 Ga. App. 574 (1) (448 SE2d 492) (1994) (OCGA § 40-6-392 (a) (4) requires that the officer inform a driver *at the time of arrest* of his right to an independent chemical analysis; see also *Perano v. State*, 250 Ga. 704, 708 (300 SE2d 668) (1983)). But because state law affords greater protection against self-incrimination than the federal constitution, after arrest, *Miranda* warnings must precede questioning during field sobriety tests. *State v. O'Donnell*, 225 Ga. App. 502, 503 (1) (484 SE2d 313) (1997); OCGA § 24-9-20. Similarly, where the driver is already in State custody, as here, the request to undergo further State testing must be preceded by

*Miranda* warnings. See *Hughes v. State*, 259 Ga. 227, 228 (2) (a) (378 SE2d 853) (1989). Since the *Miranda* warnings were necessary and had not been given, evidence of Warmack's refusal to undergo the blood and urine testing would be inadmissible as violative of his constitutional right to remain silent. See *Keenan*, 263 Ga. at 572 (2); *Whitfield*, 214 Ga. App. at 575 (3). Compare *Keith v. State*, 173 Ga. App. 462 (1) (326 SE2d 826) (1985). Under these circumstances, the trial court did not err in granting Warmack's motion in limine.

*Judgment affirmed. Johnson and Blackburn, JJ., concur.*

DECIDED JANUARY 14, 1998.

*Kermit N. McManus, District Attorney, Mark P. Higgins, Jr., Assistant District Attorney*, for appellant.

*Mitchell & Mitchell, E. Neil Wester III*, for appellee.