## A99A0399. SCANLON v. THE STATE.
(514 SE2d 876)

JOHNSON, Chief Judge.

Patricia Scanlon was charged with driving under the influence of alcohol to the extent that it was less safe for her to do so, failure to

maintain lane, and failure to maintain minimum speed. The trial court granted her motion for a directed verdict of acquittal as to the charges of failure to maintain lane and failure to maintain minimum speed. A jury found her guilty of the DUI charge. She appeals from the judgment of conviction entered on the verdict.

Viewed in a light most favorable to the verdict, the evidence shows: Scanlon was driving her car on Georgia 400. A police officer stopped her after he saw her car moving slowly, causing traffic congestion, and weaving in its lane. Based on her physical appearance and the manner in which she performed various field sobriety tests, the officer arrested Scanlon for DUI. The officer placed handcuffs on Scanlon, put her in the rear seat of the patrol car, and called a tow truck. Although Scanlon had not been advised of her *Miranda* rights, the officer read an implied consent notice to her. Scanlon verbally consented to take a chemical breath test and was taken to the local detention center where she was tested on an Intoxilyzer 5000.

Before trial, Scanlon moved to suppress or exclude the breath test results and evidence that she consented to the breath test. Scanlon asserted that admission of this evidence would violate her federal and state privilege against self-incrimination, her state constitutional right of due process, and her statutory right against self-incrimination because she was never advised of her *Miranda* rights after her arrest. After an evidentiary hearing, the trial court ruled that the breath test results and evidence that Scanlon consented to the breath test were admissible. Scanlon asserts this ruling is error. We disagree and affirm.

1. The privilege against self-incrimination protects an accused only from being compelled to testify against herself, or otherwise to provide the state with evidence of a testimonial or communicative nature. *United States v. Wade*, 388 U. S. 218, 221 (87 SC 1926, 18 LE2d 1149) (1967). In order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information. *Pennsylvania v. Muniz*, 496 U. S. 582, 594 (110 SC 2638, 110 SC 528) (1990). When asked if she would take a chemical breath test, Scanlon replied "yes." This verbal response was neither testimonial nor communicative in nature; it was neutral in its effect and thus, not protected by the privilege against self-incrimination. See id. at 593-597.

Scanlon's understanding of the Intoxilyzer test and her consent to take it were not prompted by an interrogation within the meaning of *Miranda*. See id. at 600-601. The officer questioned Scanlon only as to whether she understood his instructions and wished to submit to the test. "These limited and focused inquiries were necessarily attendant to the legitimate police procedure" for giving implied consent notice, "and were not likely to be perceived as calling for any

incriminating response." (Citation and punctuation omitted.) Id. at 605.

Thus, the absence of *Miranda* warnings does not require suppression of Scanlon's consent to the breath test under federal law. Id. at 604-605.

2. Admission of the breath test results did not violate Scanlon's Fifth and Fourteenth Amendment rights even though she was in custody and no *Miranda* warnings were given. See *Price v. State*, 269 Ga. 222, 225 (3), n. 13 (498 SE2d 262) (1998); *Morrissette v. State*, 229 Ga. App. 420, 421-422 (1) (a) (494 SE2d 8) (1997). The results obtained from a chemical breath test, like the results obtained from a sobriety test or a blood test, are not evidence of a testimonial or communicative nature. See *Schmerber v. California*, 384 U. S. 757, 765 (86 SC 1826, 16 LE2d 908) (1966); see also *United States v. Wade*, supra at 221-223; *Green v. State*, 194 Ga. App. 343, 344 (3) (390 SE2d 285) (1990). Scanlon's testimonial capacities were not implicated by the chemical breath test. Her participation in the breath test, except as a donor, was irrelevant to the results of the test, which depended solely on chemical analysis. See *Schmerber*, supra at 765.

3. Scanlon claims that it violated OCGA § 24-9-20 to admit in evidence her consent to a chemical breath test and the results of that test. We find this claim to be without merit.

OCGA § 24-9-20 (a) provides: "No person who is charged in any criminal proceeding with the commission of any indictable offense or any offense punishable on summary conviction shall be compellable to give evidence for or against himself." OCGA § 24-9-20 is not applicable here because although Scanlon was in custody, she was not *charged* in a criminal proceeding when she consented to take and took the chemical breath test. See *Montgomery v. State*, 174 Ga. App. 95, 96 (1) (329 SE2d 166) (1985); see also *Keenan v. State*, 263 Ga. 569, 572 (2) (436 SE2d 475) (1993).

4. Scanlon contends that the Supreme Court's holding in *Price v. State*, supra at 224 (3), requires that her conviction be reversed. We disagree.

The Supreme Court concluded in *Price* that under Georgia law, *Miranda* warnings must *precede* a request to perform a field sobriety test if the suspect is in custody. See id. at 225 (3); accord *Turner v. State*, 233 Ga. App. 413, 416 (1) (b) (504 SE2d 229) (1998); *State v. O'Donnell*, 225 Ga. App. 502, 504 (2) (484 SE2d 313) (1997); *State v. Pastorini*, 222 Ga. App. 316, 317-318 (1) (474 SE2d 122) (1996).

The cases cited by Scanlon involve field sobriety tests. This court is aware that police officers frequently rely upon field sobriety tests to bolster their opinions regarding a suspect's state of sobriety. Often the principal evidence upon which an officer relies when making a probable cause determination in a DUI case is the result of a sus-

pect's field sobriety test. During field sobriety testing, an officer gives a suspect various instructions as to how and when to perform the tests and verbal response tests are also frequently used. How accurately a suspect follows testing instructions and performs the tests is generally admissible at trial.

A chemical breath test does not require the same sort of extensive verbal and physical responses, and a chemical test is usually performed after the police have already established probable cause by other admissible evidence.

Unlike cases involving field sobriety testing, this court has never held that *Miranda* warnings must precede the giving of an implied consent notice to a DUI suspect in police custody. Our state constitution does not prohibit the taking of a blood, urine, breath, or other bodily substance sample from a defendant without her consent, provided the taking of the sample is done under constitutionally acceptable conditions. See *Fantasia v. State*, 268 Ga. 512, 514 (2) (491 SE2d 318) (1997); *Keenan*, 263 Ga. at 570; *State v. Leviner*, 213 Ga. App. 99, 100 (2) (443 SE2d 688) (1994). In the case of *Lankford v. State*, 204 Ga. App. 405, 406 (1) (419 SE2d 498) (1992), this Court held that a refusal to take a blood-alcohol test was not an act coerced by the officer and thus the refusal was not protected by the privilege against self-incrimination. See also *Buchnowski v. State*, 233 Ga. App. 766, 768 (2) (505 SE2d 263) (1998). We find the holding in *Lankford* to be equally applicable to cases where the suspect consents to chemical testing.

Under the Georgia implied consent statutes, Scanlon was given a genuine choice whether to consent to a chemical breath test; she was not coerced or compelled to consent to chemical testing. Thus, even though she was not given *Miranda* warnings before being given the implied consent notice, her state constitutional right of due process and privilege against self-incrimination were not violated. Compare *State v. Mack*, 207 Ga. App. 287 (427 SE2d 615) (1993); see *Fantasia*, supra; *Keenan*, supra; *State v. Highsmith*, 190 Ga. App. 838-839 (380 SE2d 272) (1989). In view of the statutory protections provided by our implied consent statutes, we decline to extend the holding in *Price*, supra, and the similar cases of this Court, so as to require that a *Miranda* warning precede a request to submit to a chemical breath test when a suspect is in police custody.

5. Scanlon contends that the trial court erred in denying her request that the trial court give a charge to the jury that included an explanation of the requirements for and contents of *Miranda* warnings, the state's burden to prove that *Miranda* warnings were properly given and thereafter waived, the voluntariness of a defendant's pretrial statement, and the conditions which must be met before a defendant's post-arrest statement could be considered by the jury. We

find no error.

First, as determined in Division 1, *Miranda* warnings were not required before Scanlon was given an implied consent notice and the chemical breath test was performed. It is not error to decline to give a charge not reasonably raised by the evidence. See *Lance v. State*, 191 Ga. App. 701, 703 (2) (382 SE2d 726) (1989).

Second, although correct as an abstract principle of law, the requested charge was not adequately adjusted to the evidence. Thus, even if the issue had been reasonably raised by the evidence, the trial court did not err in refusing to give the requested charge. See *Morrissette v. State*, 229 Ga. App. at 425 (3) (a); *Haney v. State*, 234 Ga. App. 214, 217 (2) (507 SE2d 18) (1998).

*Judgment affirmed. McMurray, P. J., and Ruffin, J., concur.*

DECIDED MARCH 17, 1999 —
RECONSIDERATION DENIED MARCH 30, 1999 — ▮▮▮▮▮▮▮

*Banks, Stubbs & Neville, Rafe Banks III*, for appellant.

*Leslie C. Abernathy, Solicitor, Laura A. Janssen, Assistant Solicitor*, for appellee.