A99A1751. THE STATE v. COE.
(533 SE2d 104)

MILLER, Judge.

In this prosecution for multiple alternative counts of driving under the influence of alcohol or drugs, plus possession of less than one ounce of marijuana, the State Court of DeKalb County granted John H. Coe's motion to suppress the results of a chemical test of Coe's urine. Pursuant to OCGA § 5-7-1 (a) (4), the State brings this direct appeal. Viewed in the light most favorable to the trial court's determination, the evidence adduced at the suppression hearing authorized the following facts:

On February 10, 1998, police were conducting a driver's license and insurance roadblock, and Coe was stopped at approximately 2:00 a.m. While Coe was searching for his documents, the officer "was able to detect a slight odor of an alcoholic beverage coming from Mr. Coe's person." Coe, whose eyes were bloodshot and watery, stated he had consumed two beers. After the officer administered the horizontal gaze nystagmus, the walk and turn, and the one-leg stand field sobriety tests, he felt Coe was impaired and formally placed him under

---

[12] (Citation omitted.) *Farrow v. State*, 222 Ga. App. 689, 691 (2) (475 SE2d 706) (1996).

arrest for driving under the influence. Once Coe was placed in the rear of the patrol car, he was read the implied consent notice for suspects age 21 and over and was requested to submit to a chemical test of only his breath. A subsequent search of Coe's vehicle incident to that arrest revealed suspected marijuana in clear plastic bags plus some suspected marijuana cigarettes. The results of a breath test administered at the jail registered a blood alcohol concentration of 0.045 grams percent. At that point, the arresting officer read Coe his implied consent notice again and asked him to submit to a urine test. Coe agreed and submitted to the urine test.

The trial court denied the motion to suppress the marijuana found in the vehicle but granted the motion to suppress the results of the test of defendant's urine because Coe was never cautioned of his rights under *Miranda v. Arizona*,[1] despite his formal arrest. In three enumerations of error, the State contends this ruling is erroneous because state law, either as amended or as in effect at the time, specifically allowed the investigating officer to request a urine test after a breath test. We agree the statute in effect at the time authorized the State to request a urine test after a breath test and reverse.

1. In the version of OCGA § 40-5-67.1 (a) in effect on February 10, 1998, the General Assembly provided that, "[s]ubject to Code Section 40-6-392, the requesting law enforcement officer shall designate which test shall be administered, provided that the officer shall require a breath test or a blood test and may require a urine test." And in *State v. Warmack*,[2] this Court held that this plain statutory language authorized the requesting officer to select a breath test *and* a urine test *or* a blood test *and* a urine test. But *Warmack* went on to hold[3] that, because state law affords greater protection against self-incrimination than the federal constitution, "where the driver is already in State custody, as here, the request to undergo further State testing must be preceded by *Miranda* warnings."[4] Complying with this ruling, the trial court suppressed the results of Coe's urine test, since it was undisputed Coe was not given *Miranda* warnings before choosing to submit to the second State-administered test.

2. Under the law in place at the time in question, as well as now, routine roadside questioning does not constitute custodial interrogation triggering the protections of *Miranda*,[5] because the detainee is

---

[1] 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[2] 230 Ga. App. 157, 158 (495 SE2d 632) (1998).

[3] The *Warmack* decision also holds that this language does not, however, authorize the requesting officer to make another selection if, having initially designated only one test, the officer is "dissatisfied" with the results of that test. Id. For the reasons that follow, we overrule this statutory construction.

[4] Id. at 158-159, citing *Hughes v. State*, 259 Ga. 227, 228 (2) (a) (378 SE2d 853) (1989).

[5] *Stanley v. State*, 195 Ga. App. 706, 708 (5) (394 SE2d 785) (1990).

generally not in custody or under arrest.[6] If roadside questioning develops into an arrest, the protection of *Miranda* arises,[7] and the arrestee is entitled to suppress certain evidence obtained without proper *Miranda* warnings, such as the results of field sobriety tests.[8] But neither due process nor the Georgia privilege against self-incrimination codified at OCGA § 24-9-20 (a) is implicated by the choice granted by the Georgia Implied Consent Statute whether to submit to a chemical test of bodily substances such as blood, breath, or urine.[9] The distinction lies between performing incriminating acts, such as field sobriety tests, and submitting to breath, blood, or urine tests.[10] The State "cannot force a defendant to act, but [nevertheless] can, under proper circumstances, produce evidence from his [body]."[11] Thus, an arrestee is *not*, under Georgia constitutional or statutory law, entitled to *Miranda* warnings before deciding whether to submit to the State's request for an additional test of breath, blood, or urine.[12] The *Warmack* decision is contrary to the earlier rulings of our Supreme Court that the Georgia protections against self-incrimination are not implicated by chemical testing of bodily substances. Since the Court of Appeals has no authority to overrule or modify a decision of the Supreme Court,[13] *Warmack* itself is hereby overruled. The trial court's suppression of the urine test results can-

---

[6] *State v. O'Donnell*, 225 Ga. App. 502, 503 (1) (484 SE2d 313) (1997) (whole court).

[7] *Lebrun v. State*, 255 Ga. 406, 407 (3) (339 SE2d 227) (1986).

[8] *Hughes v. State*, 259 Ga. 227, 228 (2) (a) (378 SE2d 853) (1989). See also *Price v. State*, 269 Ga. 222, 225 (3) (498 SE2d 262) (1998) (where a reasonable person would believe the detention was not temporary, failure to give *Miranda* warnings renders evidence regarding *field sobriety tests* inadmissible); *State v. O'Donnell*, supra, 225 Ga. App. at 504 (2) (results of *field sobriety tests* given to person under arrest without prior *Miranda* warnings are inadmissible under OCGA § 24-9-20 (a), which codifies privilege against self-incrimination); *State v. Whitfield*, 214 Ga. App. 574 (3) (448 SE2d 492) (1994) (post-arrest *field sobriety tests* inadmissible without *Miranda* warnings).

[9] *Allen v. State*, 254 Ga. 433, 434 (1) (a) (330 SE2d 588) (1985). Accord *Green v. State*, 260 Ga. 625, 627 (2) (398 SE2d 360) (1990). See also *State v. Mack*, 207 Ga. App. 287 (2) (427 SE2d 615) (1993).

[10] *Kehinde v. State*, 236 Ga. App. 400, 401 (512 SE2d 311) (1999). See also *Wessels v. State*, 169 Ga. App. 246 (1) (312 SE2d 361) (1983) (defendant's refusal to submit to chemical test is not compelled and so not violative of Georgia privilege against self-incrimination).

[11] *Creamer v. State*, 229 Ga. 511, 517-518 (3) (192 SE2d 350) (1972) (surgical removal of bullet from murder suspect over objection not violative of privilege against self-incrimination under Georgia rule). See also *Strong v. State*, 231 Ga. 514, 519 (202 SE2d 428) (1973) (removal of bodily substance (blood) from unconscious suspect "does not cause the person to be a witness against himself within the meaning of Fifth Amendment protection and similar provisions of Georgia law") (citations omitted).

[12] *State v. Lord*, 236 Ga. App. 868, 870 (513 SE2d 25) (1999) (evidence not protected by privilege against self-incrimination cannot be suppressed due to absence of *Miranda* warnings). See *Fantasia v. State*, 268 Ga. 512, 513 (2) (491 SE2d 318) (1997) (if there is no State coercion or compulsion, individual's right against self-incrimination not implicated by admission of breath test results).

[13] *Adams v. State*, 174 Ga. App. 558, 559 (2) (331 SE2d 29) (1985).

not be sustained on the ground that *Miranda* warnings were not given to a DUI arrestee before he decided to submit to a urine test after taking a breath or blood test.[14]

3. As noted above, the then-applicable version of OCGA § 40-5-67.1 (a) plainly required either a breath test or a blood test of the suspect driver and equally plainly authorized a *discretionary* urine test. There was certainly no statutory requirement that the requesting officer designate *all* tests to be requested *before* the *initial* test is taken, and any contrary language in *Warmack* is hereby disapproved. In our view, former OCGA § 40-5-67.1 (a) clearly authorized a *subsequent* urine test if the requesting officer deemed it necessary or useful after seeing the results of the required breath or blood test. Since the requesting officer here was authorized by statute to request the urine test after seeing the equivocal results of Coe's breath test (0.045 grams percent) and because the Georgia law on self-incrimination does not bar the results of chemical tests on bodily substances despite the absence of post-arrest *Miranda* warnings, the trial court erred in suppressing the urine test results in this case.

*Judgment reversed. Johnson, C. J., McMurray, P. J., Pope, P. J., Andrews, P. J., Smith, Eldridge, Barnes, Ellington and Phipps, JJ., concur. Blackburn, P. J., and Ruffin, J., concur in the judgment only.*

DECIDED MARCH 29, 2000.

*Gwendolyn R. Keyes, Solicitor, Lauren E. Waller, Thomas E. Csider, Assistant Solicitors,* for appellant.
*Steven P. Berne,* for appellee.

