## A01A1444. THE STATE v. LENTSCH.
(556 SE2d 248)

SMITH, Presiding Judge.

The State appeals from the grant of Todd Lentsch's motion to suppress evidence made after he was arrested for DUI following a traffic stop. Lentsch was eventually charged in a seven-count accusation with DUI, suspended license, invalid license, no proof of insurance, driving without insurance, failure to maintain lane, and no tag. The trial court found that the initial stop was permissible but that a pat-down by the arresting officer constituted a formal arrest made without probable cause. The trial court further concluded that because *Miranda* warnings were not administered and Lentsch's right to counsel was "repeatedly" violated, all evidence gathered after the pat-down must be suppressed. We hold that the pat-down did not constitute an arrest and that although probable cause may not have existed for a formal arrest, none was necessary before requesting that Lentsch agree to a state-administered breath test. We also conclude that no violation of Lentsch's right to counsel occurred before Lentsch refused to perform the state-administered breath test. We

therefore reverse the trial court's grant of Lentsch's motion to suppress.

The record shows that while on patrol at approximately 3:00 a.m., a Cobb County police officer observed Lentsch's vehicle stopped at a red light. The officer noted that Lentsch's vehicle had moved completely past the "balk line" and was moving slowly farther into the intersection. The officer testified at the hearing on the motion to suppress that when the light turned green, he followed Lentsch's car as it turned left and drove northbound on Highway 41, where the officer observed it swerve several times. At some point, the officer turned on his blue lights, and he indicated he saw Lentsch leave his lane of travel or weave several times and twice nearly strike a curb before pulling into a parking lot.

According to the officer, Lentsch got out of his vehicle "pretty quick" and approached the police car. The officer told him several times to return to his car, but Lentsch kept approaching the police car, despite repeated commands to return to his vehicle. Because the officer had not yet conducted a pat-down, he was concerned for his safety. When Lentsch returned to his car, the officer approached and asked for a driver's license and proof of insurance. The officer could not recall whether satisfactory proof of insurance was furnished, but Lentsch did produce his driver's license.[1] He asked Lentsch where he was coming from, and Lentsch first said he was coming from the home of a friend. Later, however, he admitted he had come from a bar. The officer testified he smelled alcohol on Lentsch's breath, and he observed that Lentsch's eyes were "very bloodshot," that he was "slightly swaying side-to-side," and that he was "shuffling feet just to kind of maintain balance." In fact, the officer cautioned Lentsch not to fall when he approached the police officer, because Lentsch was "stumbling a little bit." He asked Lentsch if he had had anything to drink, and Lentsch initially said he had not. He then asked Lentsch to get out of the car and "patted him down real quick just for weapons for my safety." While he was being patted down, Lentsch admitted he had drunk a glass of wine that night.

The officer then asked Lentsch to perform voluntary field sobriety tests, and although Lentsch did not refuse to do so, he replied that he wished to speak with his attorney before making any decisions. The officer responded that Lentsch did not have that right at that time, that he was not under arrest, that the tests were completely voluntary, and that he could refuse them, but that he did not have the right to legal advice at that moment. His only options were

---

[1] Lentsch's Illinois driver's license eventually was found to have been suspended for DUI. No proof of insurance was ever found for the vehicle Lentsch was driving.

to take the field tests or to refuse to take them. While this conversation continued for several minutes, another officer arrived. The officers insisted that Lentsch did not have the right to an attorney's advice before the field sobriety tests, while Lentsch continued to insist that he would not refuse, but he would not agree to perform the tests until he spoke with his attorney. Ultimately, the officers stopped asking, and Lentsch was placed in handcuffs and read the implied consent warning. He refused to take a breath test without consulting his lawyer. He was then removed to the police station, where he again refused to perform a breath test.

The court found that the testimony of the officer on the issue of weaving was not credible and found that the officer's testimony that Lentsch was swaying on his feet was "impeached" by the officer's statement in his report that Lentsch was "steady on his feet" and by the videotape, which did not show swaying.[2] The court concluded nevertheless that because an articulable suspicion of criminal conduct existed, the stop of Lentsch was lawful. We agree. The court also found, however, that Lentsch was placed under arrest when he was patted down for weapons. Even though the officer specifically told Lentsch several times that he was not under arrest, the trial court reasoned that the officer's actions in making Lentsch turn his back and holding his hands during the pat-down "escalated this encounter from a mere roadside investigation to a full arrest" for which no probable cause existed. We cannot agree with this conclusion. Nor can we agree with the trial court's finding that even if probable cause had existed at this point, all Lentsch's statements must be suppressed because Lentsch did not receive *Miranda* warnings and that because Lentsch was in custody, his right to counsel was "repeatedly denied." Finally, we do not find, as did the trial court, that even if Lentsch was not actually arrested before a formal arrest was eventually made, "probable cause did not exist at the time of the formal arrest."

1. The mere fact that the officer held Lentsch's hands with one hand while patting him down with the other did not transform the pat-down for weapons into a formal arrest. This issue is a mixed question of law and fact, and a trial court's determination will not be disturbed unless it is clearly erroneous. *Harper v. State*, 243 Ga. App. 705, 706 (1) (534 SE2d 157) (2000). In this case, the trial court's determination was clearly erroneous. Not every detention is an arrest. The test for determining whether a person is in custody at a traffic stop is not whether that person is briefly restrained, but

---

[2] The officer testified that the statement in his report was "a misprint or a misspelling on my part"; he meant to say that Lentsch was *unsteady* on his feet. He also explained that the tape "didn't show it very clearly, a lot of it due to the blue lights, and just, I mean, to the clarity of the video. But slight swaying while I was talking with him."

whether "a reasonable person in the suspect's position would have thought the detention would not be temporary." (Citations and punctuation omitted.) Id. Given Lentsch's initial failure to heed the officer's command that he get back in his car, the officer's repeated informing of Lentsch that he was merely being patted down to ensure the officer's safety, and the fact that after the pat-down Lentsch was not physically restrained but held a conversation with the officer, the trial court was incorrect in concluding that the brief restraint during the pat-down was anything but temporary. The trial court erred in granting Lentsch's motion to suppress on this ground.

2. We need not determine whether probable cause existed at this point, because no arrest had yet occurred and probable cause was not necessary. And since Lentsch was not in custody, no *Miranda* warnings were necessary at this point. *Miranda* warnings are not required before sobriety tests are performed unless a suspect is in custody. *Keenan v. State*, 263 Ga. 569, 571-572 (2) (436 SE2d 475) (1993). Compare *Price v. State*, 269 Ga. 222, 224-225 (3) (498 SE2d 262) (1998) (*Miranda* warnings necessary because suspect "in custody" when field sobriety tests performed). The trial court erred in granting Lentsch's motion to suppress on this ground.

3. Finally, even if probable cause did not exist for a formal arrest when Lentsch was handcuffed, it existed after he was read the implied consent rights and refused to take the state-administered chemical test. A suspect may be advised of implied consent rights and required to choose whether to submit to or refuse a state-administered chemical test even though that suspect is not under arrest. *Joiner v. State*, 239 Ga. App. 843, 847 (1) (b) (ii), (iii) (522 SE2d 25) (1999). Lentsch was not entitled to an attorney at this stage. *Cogdill v. Dept. of Public Safety*, 135 Ga. App. 339, 340-341 (2) (217 SE2d 502) (1975). But even after Lentsch was placed in handcuffs, the failure to give *Miranda* warnings does not require that Lentsch's refusal to take a state-administered breath test be suppressed. *Bowman v. Palmour*, 209 Ga. App. 270, 271 (2) (433 SE2d 380) (1993). We have held that the results of breath tests are admissible notwithstanding that a suspect is in custody when the test is given and no *Miranda* warnings are given. The results of a breath test are not testimonial or communicative evidence. *Scanlon v. State*, 237 Ga. App. 362, 364 (2) (514 SE2d 876) (1999).

> Unlike cases involving field sobriety testing, this court has never held that *Miranda* warnings must precede the giving of an implied consent notice to a DUI suspect in police custody. Our state constitution does not prohibit the taking of a blood, urine, breath, or other bodily substance sample from

a defendant without [his] consent, provided the taking of the sample is done under constitutionally acceptable conditions.

(Citations omitted.) Id. at 365 (4). It follows that Lentsch's refusal to take such a test is also admissible, as provided by OCGA § 40-6-392 (d). Combined with the officer's observations about the odor of alcohol emanating from Lentsch and his bloodshot eyes, Lentsch's refusal to take the state-administered chemical test provided sufficient probable cause for his arrest. The trial court's grant of Lentsch's motion to suppress is therefore reversed.

*Judgment reversed. Barnes and Phipps, JJ., concur.*

DECIDED NOVEMBER 8, 2001 —
RECONSIDERATION DENIED NOVEMBER 30, 2001 — ▮▮▮▮▮

*Barry E. Morgan, Solicitor-General, Keith S. Hasson, Assistant Solicitor-General, Browning & Tanksley, Lawrence J. LoRusso,* for appellant.
*Head, Thomas, Webb & Willis, Jamie S. Wingler,* for appellee.