**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**January 15, 2013**

# In the Court of Appeals of Georgia

A12A1795. JONES v. THE STATE.

ELLINGTON, Chief Judge.

Following a bench trial, the State Court of Henry County found Robert Lee Jones guilty beyond a reasonable doubt of driving while under the influence of alcohol (DUI – less safe), OCGA § 40-6-391 (a) (1), and possession of an open alcoholic beverage container in the passenger area of a vehicle, OCGA § 40-6-253 (b) (1) (B). Jones appeals, contending that the trial court erred in denying his motion to suppress the results of his state-administered breath test. Finding no error, we affirm.

Jones' sole contention on appeal is that the trial court should have suppressed the breath test results because the officer who read him the implied consent notice

referred only to a blood test and, as a result, he (Jones) did not knowingly and voluntarily consent to taking a breath test.

> While the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.

(Citations omitted.) *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

The trial court's order denying Jones' motion to suppress shows that the State and Jones stipulated to the following facts:

> On October 30, 2011, Officer Gleason of the Henry County Police Department conducted a traffic stop of Mr. Jones.[1] After the ensuing encounter, Officer Gleason arrested Mr. Jones for DUI. Officer Gleason thereafter read Mr. Jones the statutory implied consent notice for suspects aged twenty-one or over, specifically asking only for a blood test.[2] Mr. Jones agreed. No issue is presented regarding articulable

---

[1] The detention and arrest of Jones were recorded.

[2] See OCGA § 40-5-67.1 (b) (2) (This statute requires an arresting officer to read the following notice to DUI suspects who are 21 years old or older: "Georgia law requires you to submit to state administered chemical tests of your blood, breath, urine, or other bodily substances for the purpose of determining if you are under the influence of alcohol or drugs. . . . After first submitting to the required state tests, you

2

suspicion for the stop, probable cause for the arrest, or the timeliness of the implied consent warning.[3] A second Henry County police officer – Officer Johnson – transported Mr. Jones to the Henry County Jail. Officer Gleason did not accompany Officer Johnson and Mr. Jones to the jail. At the jail, Officer Johnson conducted a state-administered test of Mr. Jones' breath. No test was conducted on Mr. Jones' blood. Before administering the breath test, Officer Johnson did not re-read the implied consent notice to ask for a breath test. There was no conversation between Officer Johnson and Mr. Jones regarding which type of implied consent test would be conducted. Nevertheless, Mr. Jones voluntarily submitted to the state-administered breath test without protest.[4]

Based upon such stipulated and, thus, undisputed facts, the trial court concluded that the results of Jones' state-administered breath test were admissible. According to the court, the law "makes clear that police need not, at [the] time of

---

are entitled to additional chemical tests of your blood, breath, urine, or other bodily substances at your own expense and from qualified personnel of your own choosing. Will you submit to the state administered chemical tests of your (designate which tests) under the implied consent law?").

[3] Further, Jones stipulated that the implied consent notice was proper under OCGA § 40-5-67.1 (b) (2), with the exception of the officer's failure to specifically designate a breath test.

[4] In addition, during the stipulated bench trial, the State and Jones further stipulated that Officer Gleason had intended to designate both a blood and breath test, but only verbalized a request for a blood test, and that Jones never requested a different or independent test.

3

arrest, designate the ultimate test to be performed[,]" nor is there a requirement that an officer designate *all* of the tests that may later be requested before performing the initial test. See OCGA § 40-5-67.1 (a) ("[T]he requesting law enforcement officer shall designate which test or tests shall be administered initially and may subsequently require a test or tests of any substances not initially tested."); see also *State v. Heredia*, 252 Ga. App. 89, 90 (2) (555 SE2d 91) (2001)[5]; *State v. Coe*, 243 Ga. App. 232, 235 (3) (533 SE2d 104) (2000).[6] The trial court added that, in *Collins v. State*, 290 Ga. App. 418, 420 (1) (659 SE2d 818) (2008), this Court found no implied consent violation even when the officer failed to designate *any* test but, instead, let the defendant choose whether to submit to a breath, blood, or urine test.

---

[5] In *Heredia*, this Court ruled that "[t]he defendant's right to an independent test was not compromised simply because the officer reread the implied consent warning five minutes after its first reading and changed the test designation from breath to blood and urine based on newly discovered evidence." *State v. Heredia*, 252 Ga. App. at 90 (2).

[6] In *Coe*, this Court ruled that, under a former version of OCGA § 40-5-67.1 (a), which provided that "the officer shall designate which test shall be administered . . . [and] shall require a breath test or a blood test and may require a urine test," there "was certainly no statutory requirement that the requesting officer designate *all* tests to be requested *before* the *initial* test is taken[.] [F]ormer OCGA § 40-5-67.1 (a) clearly authorized a *subsequent* urine test if the requesting officer deemed it necessary or useful after seeing the results of the required breath or blood test." *State v. Coe*, 243 Ga. App. at 233 (1), 235 (3).

This Court explained that "[t]he determinative issue with the implied consent notice is whether the notice given was substantively accurate so as to permit the driver to make an informed decision about whether to consent to testing." (Citations and punctuation omitted.) Id. at 420 (1). According to this Court, because the implied consent warning begins by advising the defendant that "Georgia law requires you to submit to state administered chemical tests of your blood, breath, urine or other bodily substances[,]" the trooper's failure to designate the specific test to be performed did not change the substance or meaning of the implied consent warning. Id. Thus, the defendant "was under notice that the state-administered chemical tests would be of his 'blood, breath, urine or other bodily substances[,]' [and such notice] was sufficiently accurate to permit [the defendant] to make an informed decision about whether to consent to testing." Id. Based upon this authority, the trial court in this case found that the officer's failure to specifically designate a breath test when reading the implied consent warning did not require the exclusion of Jones' breath test results.

Further, the trial court concluded that Jones had consented to the breath test by submitting thereto without protest, and, as a result, the test results were admissible, pursuant to this Court's ruling in *Doyle v. State*, 281 Ga. App. 592, 594-595 (2) (636

5

SE2d 751) (2006). In *Doyle*, the arresting officer testified that he read the implied consent notice and that Doyle responded affirmatively when asked if he would consent to chemical testing. Id. at 594 (2). Thus, there was evidence to support the court's finding that Doyle had consented to such test. Id. This Court went further, however, emphasizing that

> the State did not have to show Doyle's consent. The State had *only* to show that, after being advised of his rights pursuant to OCGA § 40-6-392, Doyle *did not refuse* to submit to the State-administered test. Given that Doyle, in fact, took the test, he obviously did not refuse to submit to it. Accordingly, the trial court did not err in admitting the results of the state-administered chemical test.

(Citation, punctuation, and footnote omitted; emphasis supplied.) Id. at 594-595 (2). Similarly, in the instant case, it is undisputed that Jones verbally consented to blood testing following the implied consent warning given by Officer Gleason; that he never revoked such consent; that he never indicated his refusal to submit to breath testing, either verbally or non-verbally; that he never inquired about a blood test or asked for an independent test; and that there was no evidence that he was forced or coerced into

6

submitting to breath testing. Accordingly, the trial court did not err in concluding that *Doyle* authorized the admission of the test results.[7]

Finally, in a footnote in its suppression order, the trial court stated that the parties had stipulated that Jones had voluntarily consented to the breath test, and it suggested that, as a result of Jones' consent, those test results would be admissible pursuant to OCGA § 40-5-67.1 (d.1), even if the officers had given him *no* implied consent warning. Subsection (d.1), which the General Assembly enacted in 2006,[8] amended OCGA § 40-5-67.1 by adding the following provision: "Nothing in this Code section shall be deemed to preclude the acquisition or admission of evidence of a violation of Code Section 40-6-391 if obtained by voluntary consent or a search warrant as authorized by the Constitution or laws of this state or the United States."

---

[7] Cf. *Howell v. State*, 266 Ga. App. 480, 482 (1) (a) (597 SE2d 546) (2004) ("[U]pon being read implied consent warnings by one of the arresting officers, Howell unequivocally revoked his implied consent. Without engaging Howell in further discourse, [the officer] arrested him and transported him to a police station[,] where he directed another officer to administer the breath test. The second officer instructed Howell to blow into the breath testing device. There is no evidence Howell was asked a second time whether he would consent to a state-administered test and no evidence that he rescinded his refusal and thereafter consented. He was thus administered a breath test simply because he did not refuse to cooperate." Under such circumstances, the trial court erred in denying Howell's motion to suppress.) (footnote omitted).

[8] Ga. L. 2006, p. 329, § 2.

Although, at the time the trial court issued its order in the instant case, this Court had not construed subsection (d.1), except in dicta, this Court has since directly addressed the meaning and significance of the subsection in *McMullen v. State*, 316 Ga. App. 684, 693-694 (3) (a) (730 SE2d 151) (2012). In *McMullen*, the evidence showed that the defendant, who had been transported to a hospital after being involved in a serious car accident, voluntarily consented to giving a blood sample. Id. at 685-686. On appeal, however, the defendant asserted that the trial court erred in failing to suppress the results of a blood test because she was not given an implied consent warning before her blood was drawn. Id. at 693-694 (3) (a). This Court ruled, however, that, "as we have previously acknowledged, [OCGA § 40-5-67.1 (d.1)] eliminates the need to give the [implied consent] notice when an individual voluntarily agrees to testing." (Punctuation and footnote omitted.) Id., quoting *Williams v. State*, 297 Ga. App. 626, 628 (677 SE2d 773) (2009). Consequently, this Court concluded that, pursuant to OCGA § 40-5-67.1 (d.1), the trial court did not err in denying McMullen's motion to suppress based upon the officer's failure to give an implied consent warning before her blood was drawn for testing. Id.

Accordingly, based upon the undisputed facts in this case and the aforementioned authority, we find no error in the trial court's legal analysis, nor in

8

its conclusion that Jones voluntarily consented to the breath test. Therefore, the trial court was authorized to deny Jones' motion to suppress.

*Judgment affirmed. Phipps, P. J., and Dillard, J., concur.*