**FIFTH DIVISION**
**DILLARD, P. J.,**
**REESE and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 23, 2017**

# In the Court of Appeals of Georgia

A16A1865. MCKIBBEN v. THE STATE.

DILLARD, Presiding Judge.

Following a stipulated bench trial, Kirby McKibben was convicted of driving under the influence (per se), driving under the influence (less-safe), driving without headlights, and failure to maintain lane.[1] McKibben appeals from his convictions by challenging the trial court's denial of his motion to suppress evidence obtained in a warrantless blood test. Specifically, McKibben argues that he did not freely and voluntarily consent to the blood test under the standard set forth recently by our Supreme Court in *Williams v. State*.[2] But because the trial court properly considered

---

[1] McKibben's convictions for DUI less-safe and failure to maintain lane were merged for purposes of sentencing with his conviction for DUI per se.

[2] 296 Ga. 817 (771 SE2d 373) (2015).

the totality of the circumstances in finding that McKibben consented to the blood test, we affirm.

On appeal from a ruling on a motion to suppress, we construe the evidence "most favorably to affirming the trial court's factual findings and judgment."[3] Indeed, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous.[4] And here, the parties appear to agree on all the relevant facts and evidence. Consequently, we review the trial court's application of the law to the facts *de novo*, "examining the entire record and making an independent determination of the ultimate issue of voluntariness."[5]

So viewed, the evidence presented at the hearing on McKibben's motion to suppress establishes that Holly Springs police dispatch received a call about a possibly intoxicated driver in a maroon Scion, and information indicating the vehicle's direction of travel. These particulars were then broadcast over the police radio and, shortly thereafter, a Holly Springs sergeant observed a vehicle matching

[3] *Brooks v. State*, 285 Ga. App. 624, 626 (647 SE2d 328) (2007).

[4] *McAllister v. State*, 325 Ga. App. 583, 583 (754 SE2d 376) (2014).

[5] *State v. Fulghum*, 261 Ga. App. 594, 594 (1) (583 SE2d 278) (2003) (punctuation omitted).

the description "swerving from left to right . . . [and] crossing one time over the center divider[.]" After initiating a traffic stop, the sergeant approached the driver, McKibben, and immediately smelled a strong odor of an alcoholic beverage coming from inside the vehicle. The sergeant also noticed that McKibben's eyes were glazed and his speech was "thick-tongued." According to the sergeant, McKibben's body reeked of an alcoholic beverage and he appeared off balance when exiting the vehicle. Nevertheless, McKibben adamantly denied consuming alcohol and declined to take any field-sobriety evaluations.

McKibben's denials notwithstanding, the sergeant placed him under arrest on suspicion of driving under the influence. McKibben was also read the implied-consent notice for suspects 21 or over from a prepared card, which stated as follows:

> Georgia law requires you to submit to state administered chemical test[s] of your blood, breath, urine, or other bodily substances for the purpose of determining if you are under the influence of alcohol or drugs. If you refuse this testing[,] your Georgia driver's license or privilege to drive on the highways of this state will be suspended for a minimum period of one year. Your refusal to submit to that required testing may be offered into evidence against you at trial. If you submit to testing and the results indicated an alcohol concentration of 0.08 grams or more, your Georgia driver's license or privilege to drive on the highways of this state may be suspended for a minimum period of one year. After first submitting

3

to the required state test[,] you are entitled to additional chemical tests of your blood, breath, urine, or other bodily substances at your own expense and from qualified personnel of your own choosing. Will you submit to the state administered chemical test of your blood under the implied consent law?[6]

McKibben replied "yes," but did not ask any questions about the implied-consent notice or his rights, did not request an attorney, and never indicated an unwillingness to have the blood sample taken. The sergeant testified that (1) neither he nor McKibben ever raised their voices during this encounter, (2) their conversation was polite, and (3) he did not threaten McKibben or make him any promises in exchange for giving consent.

Thereafter, the sergeant transported McKibben to a fire station less than one mile away. Once they arrived at the station, McKibben's handcuffs were removed and he submitted to a blood draw by a qualified firefighter. According to the sergeant, McKibben understood what was going on, appeared intelligent and well-spoken, and

---

[6] The specific language of this notice appears identical in all relevant aspects to the text contained in OCGA § 40-5-67.1 (b) (2).

4

"was very cooperative throughout the entire encounter." The blood test ultimately showed that McKibben's blood-alcohol level was above the legal limit.[7]

McKibben later moved to suppress the results of his blood test, arguing that his acquiescence to the request for a blood draw, following a reading of the implied-consent notice, did not constitute actual consent. The trial court disagreed. Specifically, the court concluded that, in light of *Williams v. State*,[8] and based on "a totality of the circumstances," McKibben voluntarily consented to having his blood drawn.[9] In doing so, the court noted that McKibben agreed to take the test after having been read his implied-consent notification; his blood was taken within one hour of the arrest and therefore was not the result of a prolonged detention; the sergeant did not threaten or intimidate McKibben, nor did he promise McKibben anything; the sergeant did not withhold food or drink or refuse McKibben use of the

---

[7] *See* OCGA § 40-6-391 (a) (5) ("A person shall not drive or be in actual physical control of any moving vehicle while[ ] . . . [t]he person's alcohol concentration is 0.08 grams or more at any time within three hours after such driving or being in actual physical control from alcohol consumed before such driving or being in actual physical control ended[.]").

[8] 296 Ga. 817 (771 SE2d 373) (2015).

[9] *See id.* at 821 ("Whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." (punctuation omitted)).

restroom; the sergeant removed McKibben's handcuffs to allow the firefighter to withdraw the blood; and McKibben willingly interacted with the firefighter collecting his blood sample and never indicated that the blood draw was not freely and voluntarily given.

On appeal, McKibben challenges the trial court's denial of his motion to suppress. Although McKibben acknowledges that he was read the implied-consent notice, acquiesced to the blood draw, and submitted to the test without resistence, he nevertheless contends that, under *Williams*, this is insufficient to show actual consent and render the search constitutionally valid. McKibben further argues that the implied-consent notice fails to inform defendants that they may refuse to comply and that the test results could be used against them in a criminal prosecution, thus negating any voluntary consent.[10] We disagree as to each of these contentions.

_____

[10] Although McKibben challenges the implied-consent statute as being coercive, he has never directly challenged the constitutionality of the statute, and the trial court therefore did not address any constitutional concerns. Thus, we can neither transfer the matter nor rule on the constitutionality of the statute. *See Kendrick v. State*, 335 Ga. App. 766, 770 n.3 (782 SE2d 842) (2016). And we take this opportunity to, once again, observe that our Supreme Court has previously upheld the implied-consent statute against a constitutional challenge much like the one posited by McKibben. *See Klink v. State*, 272 Ga. 605, 606 (1) (533 SE2d 92) (2000); *see also Kendrick*, 335 Ga. App. at 770 n.3 (making the same observation). Additionally, as we recently recognized in *Kendrick*, 335 Ga. App. at 770 n.3, although subsequent development of the law may have substantially eroded *Klink's* analytical foundation,

Historically, we considered a defendant's affirmative response to the reading of the implied-consent notice as "sufficient to allow a search of his or her bodily fluids without further inquiry into the validity of the defendant's consent."[11] However, in *Williams*, our Supreme Court "rejected this per se rule automatically equating an affirmative response to the implied consent notice with actual consent to

---

*compare Klink*, 272 Ga. at 606 (1) (holding based in part on observation that "[t]he right to refuse to submit to state administered testing is not a constitutional right, but one created by the legislature"), *with Williams*, 296 Ga. at 819-20 (holding that Fourth Amendment requires actual consent in absence of warrant or other exceptions to warrant requirement), *and Birchfield v. North Dakota*, __ U.S. __ (V) (C) (3), (VI) (136 SCt 2160, 195 LE2d 560) (2016) (holding that breath tests, but not blood tests, may be administered as a search incident to arrest for drunk driving, but acknowledging that searches are reasonable when consent is obtained, although "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense"), it nevertheless remains binding authority over this Court unless and until it is overturned by our Supreme Court. *See* GA. CONST., art. VI, § VI, ¶ VI (1983) ("The decisions of the Supreme Court of Georgia shall bind all other courts as precedents."); *Whorton v. State*, 321 Ga. App. 335, 339 (1) (741 SE2d 653) (2013) (holding that "vertical *stare decisis* dictates that we faithfully adhere to the precedents established by the Supreme Court of Georgia"); Bryan A. Garner, *et al.*, THE LAW OF JUDICIAL PRECEDENT 155 ("When dealing with binding vertical precedent, a court has no room to decide how much weight or value to give each case.").

[11] *Kendrick*, 335 Ga. App. at 769; *see, e.g.*, *Meiklejohn v. State*, 281 Ga. App. 712, 714 (637 SE2d 117) (2006); *State v. Lewis*, 233 Ga. App. 390, 392 (1) (504 SE2d 242) (1998).

a search within the meaning of the Fourth Amendment."[12] Now, we are charged instead with conducting "a case-by-case analysis, considering the totality of the circumstances."[13]

Thus, McKibben is correct that, under *Williams*, the results of a warrantless blood test are subject to suppression unless the State establishes that the suspect freely and voluntarily consented to the test.[14] And a suspect's mere acquiescence under the implied-consent notice is not enough to render the search constitutionally valid.[15] That said, we have previously cautioned that *Williams* should not be read as imposing "a per se rule that the State must always show more than consent under the implied consent statute."[16] Rather, we take our Supreme Court at its word when it instructed trial courts to "review the totality of the circumstances in determining

---

[12] *Kendrick*, 335 Ga. App. at 769; *see also Williams*, 296 Ga. at 821-22.

[13] *Kendrick*, 335 Ga. App. at 769; *see also Williams*, 296 Ga. at 821-22.

[14] 296 Ga. at 821-22.

[15] *See id.* at 822 ("[W]hat the cases seem to indicate is that mere compliance with statutory implied consent requirements does not, per se, equate to actual, and therefore voluntary, consent on the part of the suspect so as to be an exception to the constitutional mandate of a warrant."); *Kendrick*, 335 Ga. App. at 769 ("Mere acquiescence to the authority asserted by a police officer cannot substitute for free consent." (punctuation omitted)).

[16] *Kendrick*, 335 Ga. App. at 771.

8

consent."[17] Accordingly, an affirmative response to the question posed by the implied-consent language "may be sufficient for a trial court to find actual consent, absent reason to believe the response was involuntary."[18] To put it plainly, in determining the demarcation line between actual consent and coercion, context is crucial. Thus, in order to ascertain whether a suspect freely and voluntarily consented to the test, the trial court must consider the totality of the circumstances surrounding his consent, including (but not limited to) whether there was any threat or coercion by the officer; whether the suspect was unable to give valid consent due to (for example) his youth or lack of education; and whether a reasonable person would have felt free to decline the officer's request.[19]

In this case, as in *Kendrick*, the evidence simply does not show that "the officers used fear, intimidation, threat of physical punishment, or lengthy detention

---

[17] *Id.*

[18] *Id.* at 771-72.

[19] *See id*. at 769, *citing Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (II) (B) (93 SCt 2041, 36 LE2d 854) (1973); *State v. Austin*, 310 Ga. App. 814, 817-18 (1) (714 SE2d 671) (2011); *Cuaresma v. State*, 292 Ga. App. 43, 47 (2) (663 SE2d 396) (2008); *State v. Durrence*, 295 Ga. App. 216, 218 (671 SE2d 261) (2008).

to obtain the consent."[20] Nor does McKibben argue that youth, lack of education, or low intelligence somehow negated the voluntariness of his consent.[21] Rather, McKibben argues that he did not freely and voluntarily consent to the blood test because (1) the language of the implied-consent notice made him feel as though he had no choice but to acquiesce and (2) he was not informed that his blood-test result could be used against him in a criminal prosecution. But we have already rejected these arguments in other cases.[22] Indeed, as we have previously explained, while knowledge of the right to refuse consent is one factor to be taken into account, "the government need not establish such knowledge as the sine qua non of an effective consent."[23]

Here, the record shows that McKibben gave an affirmative answer to the question posed by the implied-consent language, and he never attempted to change

---

[20] *Kendrick*, 335 Ga. App. 769 (punctuation omitted).

[21] *See id.*

[22] *See id.* at 769-71 (holding that the implied-consent notice is not coercive in failing to inform suspect of her right to refuse); *State v. Oyeniyi*, 335 Ga. App. 575, 578 (782 SE2d 476) (2016) (holding that the implied-consent notice is not misleading or an overstatement of the length of suspension authorized by law).

[23] *Kendrick*, 335 Ga. App. at 769 (punctuation omitted) (quoting *Schneckloth*, 412 U.S. at 227 (II) (B)).

that answer during the time that elapsed prior to testing. McKibben also did not appear to be impaired to the extent that he did not understand what was being asked, he did not express any objection to the test, and the officer did not force him to take the test. Thus, upon this particular record, "and considering all of the facts before us, and affording appropriate deference to the trial court that heard the testimony first-hand,"[24] we affirm the trial court's denial of McKibben's motion to suppress.

*Judgment affirmed. Reese and Bethel, JJ., concur.*

---

[24] *Id.* at 772.