**THIRD DIVISION**
**ELLINGTON, P. J.,**
**ANDREWS and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

August 9, 2017

# In the Court of Appeals of Georgia

A17A1198. SZOPINSKI v. THE STATE.

ELLINGTON, Presiding Judge.

A Forsyth County jury found Nancy Szopinski guilty of driving under the influence of alcohol to the extent that she was a less safe driver, OCGA § 40-6-391 (a) (1); and failure to maintain her lane of travel, OCGA § 40-6-48 (1). She appeals from the denial of her motion for a new trial, contending that the trial court erred in admitting evidence of her refusal to take a chemical test measuring her blood alcohol level and in allowing the State to comment on her "failure to come forward" with evidence. Finding no reversible error, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that around 4:00 a.m. on July 10, 2014, an officer observed a black Cadillac moving backward, away from a red light. When the light turned green, the driver drove forward and then turned left, crossing the fog line several times. The officer stopped the driver, whom he identified at Szopinski. Szopinski told the officer that her weaving was the result of having something in her eye. The officer smelled the odor of an alcoholic beverage coming from inside the car, and he noticed that Szopinski's eyes were bloodshot and watery. Szopinski admitted that she had consumed a couple of beers. Based on these observations, the officer conducted a DUI investigation and asked Szopinski to perform voluntary field sobriety tests. Szopinski did poorly on the field sobriety tests and she refused to give a preliminary breath test. Given her admissions and the results of the field sobriety tests, the officer arrested Szopinski for driving under the influence of alcohol.

Thereafter, the officer read verbatim from his card the Georgia Implied Consent Warning for persons 21 and over. Szopinski agreed to take a state-administered breath test measuring her blood alcohol. On the way to the jail, Szopinski asked

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2

questions regarding the state-administered test. The officer reiterated that the test was voluntary. The officer testified that, once they arrived at the jail, Szopinski refused to take the state-administered test.

At trial, Szopinski testified that she had consumed two beers several hours prior to driving. She admitted that, after her arrest, she had consented to a state-administered breath test. She also testified that she wanted to take the test. She claimed, however, that when she arrived at the jail, the police denied her the opportunity to take the test. She also testified that she had failed to maintain her lane because she had something in her eye and she was looking at her phone. On cross-examination, Szopinski admitted that she had not told the arresting officer that, in addition to having something in her eye, she had also been looking at her phone to read an old text message.

1. Szopinski contends that the trial court erred in allowing the jury to hear testimony that she had refused to take the State-administered breath test. She argues that her refusal was made upon reliance of her Fourth Amendment rights and, therefore, may not be used as evidence of her guilt. Because Szopinski's refusal was not made in reliance upon a constitutional right, but, rather, a qualified right created by the legislature, this claim of error is without merit.

3

Generally, the State may control the operation of motor vehicles upon its public roads and highways, and, pursuant to its police powers, may impose reasonable requirements on drivers. See *Ward v. State*, 188 Ga. App. 372-373 (1) (373 SE2d 65) (1988). Given that impaired drivers constitute "a direct and immediate threat to the welfare and safety of the general public[,]" Georgia law provides, in relevant part, that

> any person who operates a motor vehicle upon the highways or elsewhere throughout this state *shall be deemed to have given consent*, subject to Code Section 40-6-392, *to a chemical test or tests* of his or her blood, breath, urine, or other bodily substances for the purpose of determining the presence of alcohol or any other drug, *if arrested for any offense arising out of acts alleged to have been committed in violation of Code Section 40-6-391* or if such person is involved in any traffic accident resulting in serious injuries or fatalities.

(Emphasis supplied.) OCGA § 40-5-55 (a). OCGA § 40-6-392 (d) provides that "[i]n any criminal trial, the refusal of the defendant to permit a chemical analysis to be made of his blood, breath, urine, or other bodily substance at the time of his arrest shall be admissible in evidence against him."

"The right to refuse to submit to state administered testing is not a constitutional right, but one created by the legislature." (Citation omitted.) *Klink v.*

4

*State*, 272 Ga. 605, 606 (1) (533 SE2d 92) (2000).[2] Although Szopinski had a right to refuse a state-administered chemical test under Georgia law, the exercise of that right was not without consequences. As we have explained, "[t]he implied consent statute grants drivers the right to refuse to take a state-administered test, with one of the consequences of exercising that right being that evidence of such refusal is admissible at trial." *Williams v. State*, 297 Ga. App. 626, 628 (677 SE2d 773) (2009). See also *Hynes v. State*, 341 Ga. App. 500, 508 ( SE2d ) (2017) ("The case law interpreting implied consent laws demonstrates that the judiciary overwhelmingly sanctions the use of civil penalties and evidentiary consequences against DUI

---

[2] Szopinski's reliance on *Williams v. State*, 296 Ga. 817 (771 SE2d 373) (2015), is misplaced. That case addressed the standards to be applied when evaluating whether to *admit* evidence of a defendant's blood alcohol content obtained through state-administered chemical testing. The Supreme Court in *Williams* noted that a warrantless search is constitutional only if exigent circumstances are present or the suspect consents to the search, and "mere compliance with statutory implied consent requirements does not, per se, equate to actual, and therefore voluntary, consent on the part of the suspect so as to be an exception to the constitutional mandate of a warrant." Id. at 822. Whether a defendant has given actual consent to the procuring and testing of his or her blood requires a determination of the voluntariness of the consent under the totality of the circumstances. Id. at 823. While the reasoning in *Williams* "may have substantially eroded *Klink's* analytical foundation, . . . [the case] nevertheless remains binding authority over this Court unless and until it is overturned by our Supreme Court." (Citations omitted.) *McKibben v. State*, 340 Ga. App. 89, 92 n. 10 (796 SE2d 478) (2017).

5

suspects who refuse to comply."). Thus, the trial court did not err in admitting the evidence of Szopinski's refusal to take the state-administered breath test.

2. Szopinski also contends that the trial court erred in allowing the State to comment during closing argument on Szopinski's alleged failure to come forward with evidence in her defense.[3] Because the record does not support this claim of error, we find it to be without merit.

Szopinski testified that she initially told the arresting officer that she had failed to maintain her lane because she had something in her eye. On the stand, she also claimed that her weaving was due to her "multitasking," that she had been reading an old text message on her phone. The solicitor cross-examined Szopinski about this inconsistency, and Szopinski said that she did not mention looking at her phone because "[n]othing was asked about it." During closing, as part of an argument suggesting that it was incredible that Szopinski had decided to read an old text with something in her eye while turning left, the solicitor stated: "[I]'s the first time she's ever said it to anybody. . . . [T]hat's the first time she's ever given that story." It is

_____

[3] The Supreme Court of Georgia has consistently held since 1991 that a comment upon a defendant's silence or failure to come forward will not be allowed, even where the defendant takes the stand in his or her own defense. *Sanders v. State*, 290 Ga. 637, 640 (4) (723 SE2d 436) (2012).

clear from the record that the solicitor was not commenting on Szopinski's failure to come forward with evidence; rather, he was arguing that the jury could infer from the inconsistencies in her statements that Szopinski was making up a story to explain away her drunk driving, argument which the law allows. See *Bradford v. State*, 299 Ga. 880, 887-888 (7) (792 SE2d 684) (2016) ("[T]he prosecutor's line of questioning permissibly explored the inconsistencies between appellant's trial testimony and his prior statements made to civilians on the scene and the police soon after the shooting.") (citation omitted.). Thus, we find no merit in this claim of error.

*Judgment affirmed. Andrews and Rickman, JJ., concur*.