**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 10, 2018**

# In the Court of Appeals of Georgia

A17A2083. MACMASTER v. THE STATE.

BARNES, Presiding Judge.

A Forsyth County jury found Alison MacMaster guilty of driving under the influence of alcohol with an excessive blood-alcohol concentration ("DUI per se"), driving under the influence of alcohol to the extent it was less safe for her to drive ("DUI less safe"), and failure to maintain lane.[1] On appeal from the denial of her motion for new trial, MacMaster challenges the trial court's denial of her motion in limine seeking to exclude evidence that she consented to a State-administered breath test and the results of that test. MacMaster also challenges the trial court's denial of her motion in limine seeking to exclude evidence that she refused to take a preliminary breath test. Additionally, MacMaster argues that the trial court failed to exercise its discretion and decide whether to grant a new trial on the general grounds.

---

[1] The trial court merged MacMaster's conviction for DUI less safe into her conviction for DUI per se for purposes of sentencing.

For the reasons discussed below, we discern no error by the trial court in its rulings and therefore affirm.

1. MacMaster contends that the trial court erred in denying her motion in limine in several respects.[2]

In reviewing a trial court's ruling on a motion to suppress or motion in limine, appellate courts construe the record in the light most favorable to the trial court's

[2] MacMaster further argues that the trial court erred in denying her separate motion challenging the constitutionality of Georgia's implied consent statutory framework and associated regulations under the Due Process and Confrontation Clauses of the United States and Georgia Constitutions. But, appellate courts "will not rule on a constitutional question unless it clearly appears in the record that the trial court distinctly ruled on the point," and the record in the present case contains no such ruling. (Citation and punctuation omitted.) *Marks v. State*, 280 Ga. 70, 74 (4) (623 SE2d 504) (2005). Thus, we do not rule on this matter or transfer it to our Supreme Court. See *McKibben v. State*, 340 Ga. App. 89, 92, n. 10 (796 SE2d 478) (2017); *Kendrick v. State*, 335 Ga. App. 766, 770, n. 3 (782 SE2d 842) (2016). In any event, our Supreme Court recently rejected similar claims that the implied consent statute is unconstitutionally misleading and coercive on its face in violation of due process. See *Olevik v. State*, __ Ga. __ (3) (a) (806 SE2d 505, 520-523) (2017). See also *Schmitz v. State*, No. S17A1199, 2017 WL 4870960, at *1-2 (Ga. Oct. 30, 2017); *Fazio v. State*, __ Ga. __ (2) (806 SE2d 544, 546) (2017). Additionally, our Supreme Court and this Court have previously rejected Confrontation Clause challenges relating to State-administered chemical tests. See *Rackoff v. State*, 281 Ga. 306, 309 (2) (637 SE2d 706) (2006) (introduction of inspection certificate for breath testing machine did not violate Confrontation Clause); *Smith v. State*, 338 Ga. App. 635, 639 (4) (791 SE2d 418) (2016) (State not required under Confrontation Clause to name inspector of breath testing machine as a witness); *Phillips v. State*, 324 Ga. App. 728, 733 (751 SE2d 526) (2013) (Confrontation Clause does not apply to machines like a breath testing machine).

factual findings and judgment, and "all relevant evidence of record, including evidence introduced at trial, as well as evidence introduced at the motion to suppress hearing, may be considered." (Citation, punctuation, and emphasis omitted.) *Pittman v. State*, 286 Ga. App. 415, 416 (650 SE2d 302) (2007). See *Price v. State*, 303 Ga. App. 859, 861 (1) (694 SE2d 712) (2010).

> This means that the reviewing court generally must accept the trial court's findings as to disputed facts unless they are clearly erroneous, although the reviewing court may also consider facts that definitively can be ascertained exclusively by reference to evidence that is uncontradicted and presents no questions of credibility, such as facts indisputably discernible from a videotape.

(Citations and punctuation omitted.) *State v. Allen*, 298 Ga. 1, 2 (1) (a) (779 SE2d 248) (2015). Guided by these principles, we turn to the record in this case.

In the early morning hours of August 12, 2016, a deputy with the Forsyth County Sheriff's Office observed a black Chevrolet Tahoe repeatedly fail to maintain its lane and initiated a traffic stop. The deputy approached and made contact with the sole occupant and driver, MacMaster, and noted a strong odor of alcohol coming from her car that got stronger every time she spoke. MacMaster admitted to having consumed three beers in the last three hours at a local bar and said that another patron

3

had spilled beer on her. MacMaster also claimed that her car was out of alignment and that she was simply "not the best" driver. The deputy asked to see MacMaster's driver's license, and she handed it to him.

When the deputy walked back to his patrol car to run a check on MacMaster's license, a second deputy arrived on the scene. After the first deputy informed the second deputy of what he had observed on the roadway and during his conversation with MacMaster, the second deputy took over the investigation. The second deputy approached MacMaster, who remained seated in her car. As he spoke with MacMaster, the second deputy noted a strong odor of alcohol coming from her car and saw that she had bloodshot, watery eyes, a flushed face, and thick speech. MacMaster again admitted that she had been drinking.

Based on his observations of MacMaster, the second deputy had MacMaster step out of her car, noticed that she strongly smelled of alcohol, and asked her if she would be willing to perform a series of voluntary field sobriety tests. MacMaster said that she would be willing to do so. After instructing MacMaster, the second deputy had her perform the horizontal gaze nystagmus ("HGN") test, the walk-and-turn test, and the one-leg stand test. The second deputy observed six out of six clues of impairment for the HGN test, six out of eight clues for the walk-and-turn test, and

4

three out of four clues for the one-leg stand test. The second deputy also asked MacMaster to recite the alphabet from E to U without singing or rhyming the letters, but MacMaster sang and rhymed some of the letters. Additionally, the second deputy asked MacMaster if she would take a preliminary breath test on his handheld Alco-Sensor device (the "Alco-Sensor test"). MacMaster expressed that she was uncomfortable with the Alco-Sensor test, and the second deputy treated her response as a refusal.

Based on MacMaster's manner of driving, the strong odor of alcohol, her bloodshot, watery eyes, her thick speech, her admission to drinking, and her performance on the field sobriety tests, the second deputy placed her under arrest for DUI and failure to maintain lane. After arresting MacMaster, the second deputy read her Georgia's implied consent notice for suspects over the age of 21 and asked whether she would agree to a State-administered test of her breath. When MacMaster asked if she had a choice, the second deputy explained that it was her choice to say yes or no. MacMaster then agreed to take the test.

The second deputy transported MacMaster to the Forsyth County Detention Center for the State-administered breath test. According to the second deputy, MacMaster never changed her mind during the drive about taking the test. Once at

the detention center, MacMaster spoke with another deputy who was certified to administer the breath test on the Intoxilyzer 9000 (the "certified administrator"). MacMaster asked the certified administrator if she should take the breath test on the machine, and the administrator explained to her that she did not have to take it and that it was voluntary. MacMaster then submitted to a breath test on the Intoxilyzer, which returned blood-alcohol concentration readings of 0.166 and 0.159. According to the certified administrator, the Intoxilyzer was functioning properly and in good working order when MacMaster was tested, no components or parts were missing, the machine had passed its periodic inspections, and diagnostic tests performed on the machine that day revealed no problems.

MacMaster was charged by accusation with DUI per se, DUI less safe, and failure to maintain lane. She filed a motion in limine seeking to exclude, on several constitutional grounds, the admission of the results of the State-administered breath test and any evidence of her consent to the State-administered breath test and her refusal to take the Alco-Sensor test. MacMaster argued that she had not voluntarily consented to the State-administered breath test and that her alleged consent had been procured before she had been properly advised of her rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966), and in violation of her

6

constitutional right against self-incrimination. MacMaster further argued that her refusal to take the Alco-Sensor test was inadmissible because she had a constitutional right to refuse to consent to a warrantless search without having it introduced against her at trial.

The trial court conducted a hearing on MacMaster's motion in limine, where the two deputies on the scene of the traffic stop and the certified administrator testified to events as set out above, and the State introduced the dash-cam recordings from the two deputies' patrol cars. After hearing all the testimony and reviewing the dash-cam recordings, the trial court denied MacMaster's motion in limine.

(a) MacMaster argues that the trial court erred in denying her motion in limine to exclude the admission of the results of her State-administered breath test because the warrantless test violated her right to be free of unreasonable searches and seizures under the United States and Georgia Constitutions. According to MacMaster, the trial court erred in finding that she freely and voluntarily consented to the warrantless breath test. We disagree.

> The Fourth Amendment of the United States Constitution and Article I, Section I, Paragraph XIII of the Georgia Constitution both protect an individual's right to be free of unreasonable searches and seizures, and apply with equal force to the compelled withdrawal of

7

blood, breath, and other bodily substances. Because a breath test is a search within the meaning of the Fourth Amendment, absent a warrant, the State must show that it falls into one of the specifically established and well-delineated exceptions to the warrant requirement.

Consent is a valid basis for a warrantless search where it is given freely and voluntarily, and the State does not argue that any other exception might apply. Therefore, the only question in regard to the validity of the search is whether the State met its burden of proving that [MacMaster] actually consented freely and voluntarily under the totality of the circumstances [to the State-administered breath test].

Historically, we considered a defendant's affirmative response to the reading of the implied consent notice as sufficient to allow a search of his or her bodily fluids without further inquiry into the validity of the defendant's consent. However,[in *Williams v. State*, 296 Ga. 817, 821-822 (771 SE2d 373) (2015), our Supreme Court] rejected this per se rule automatically equating an affirmative response to the implied consent notice with actual consent to a search within the meaning of the Fourth Amendment. Instead, courts must now conduct a case-by-case analysis, considering the totality of the circumstances.

(Citations and punctuation omitted.) *Kendrick v. State*, 335 Ga. App. 766, 768-769 (782 SE2d 842) (2016). See *State v. Young*, 339 Ga. App. 306, 310-311 (793 SE2d 186) (2016); *Jacobs v. State*, 338 Ga. App. 743, 747-748 (2) (791 SE2d 844) (2016).

8

As this Court has further explained,

In conducting a totality of the circumstances analysis, we have considered a host of factors. A consent to search will normally be held voluntary if the totality of the circumstances fails to show that the officers used fear, intimidation, threat of physical punishment, or lengthy detention to obtain the consent. The defendant's affirmative response to the implied consent notice may itself be sufficient evidence of actual and voluntary consent, absent reason to believe the response was involuntary. The defendant's failure to express an objection to the test or change his or her mind also is evidence of actual consent. There is, however, no duty to inform suspects of their constitutional right against unreasonable searches. The use of handcuffs does not negate a defendant's ability to give consent. And the mere fact that a defendant was visibly intoxicated does not render his consent involuntary.

(Citations and punctuation omitted.) *Jacobs*, 338 Ga. App. at 748-749 (2).

Here, the evidence, including the dash-cam recording from the second deputy's patrol car, shows that MacMaster gave an affirmative response to the question posed by the deputy when he recited the implied consent notice, she never changed her mind before the testing occurred, and she did not appear to be impaired to the extent that she was unable to understand what was asked. Furthermore, the evidence "does not show that the [the deputy] used fear, intimidation, threat of physical punishment, or lengthy detention to obtain [MacMaster's] consent to the breath test, and the [deputy]

9

and [MacMaster] conducted themselves calmly" throughout their encounter. (Punctuation omitted.) *Young*, 339 Ga. App. at 311, quoting *Kendrick*, 335 Ga. App. at 769. Nor is there any evidence that MacMaster's age or level of education negated her consent. While MacMaster argues that the language of the implied consent notice is false and misleading to the point where an individual's consent to a breath test cannot be considered voluntary, our Supreme Court has rejected that argument. See *Schmitz*, 2017 WL 4870960, at *1-2; *Fazio*, __ Ga. at __ (2) (806 SE2d at 546); *Olevik*, __ Ga. at __ (3) (a) (806 SE2d at 520-523). Accordingly, given the evidentiary record in this case, we conclude that the trial court committed no error in finding under the totality of the circumstances that MacMaster freely and voluntarily consented to the State-administered breath test. See *McKibben v. State*, 340 Ga. App. 89, 93-94 (796 SE2d 478) (2017); *Young*, 339 Ga. App. at 311-312; *Jacobs*, 338 Ga. App. at 749-750 (2); *Kendrick*, 335 Ga. App. at 772.

Furthermore, in *Birchfield v. North Dakota*, __ U. S. __ (V) (C) (3) (136 SCt 2160, 2184-2185, 195 LE2d 560) (2016), the Supreme Court of the United States held that the Fourth Amendment to the United States Constitution permits warrantless breath tests as searches incident to arrests for drunk driving. Similarly, Article I, Section I, Paragraph XIII of the Georgia Constitution allows a warrantless breath test

10

to be administered as a search incident to arrest. See *Olevik*, __ Ga. at __ (2) (b) (806 SE2d at 512). Consequently, the warrantless test of MacMaster's breath was authorized by the search-incident-to-arrest exception to the warrant requirement under both the United States and Georgia Constitutions, irrespective of whether MacMaster's consent was freely and voluntarily obtained for the breath test. See id.

(b) MacMaster argues that the trial court erred in denying her motion in limine to exclude the admission of her statements consenting to the State-administered breath test and of the results of that test because the admission of that evidence at trial violated her constitutional right against self-incrimination under the United States and Georgia Constitutions. We are unpersuaded.

The scope of the right against self-incrimination protected by the Fifth Amendment to the United States Constitution "is limited to evidence of a testimonial or communicative nature." *Olevik*, __ Ga. at __ (2) (c) (806 SE2d at 513). See *Schmerber v. California*, 384 U.S. 757, 764 (II) (86 SCt 1826, 16 LE2d 908) (1966); *Muhammad v. State*, 282 Ga. 247, 250-251 (3) (647 SE2d 560) (2007); *Scanlon v. State*, 237 Ga. App. 362, 363-364 (1), (2) (514 SE2d 876) (1999). "[T]o be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information." *Doe v. United States*, 487 U.S. 201, 210

11

(II) (A) (108 SCt 2341, 101 LE2d 184) (1988). A defendant's verbal consent to take a breath test and the results obtained from such a test are not evidence of a testimonial or communicative nature and thus do not implicate the right against self-incrimination under the Fifth Amendment. See *Scanlon*, 237 Ga. App. at 363-364 (1), (2).

In contrast, a defendant's right against self-incrimination afforded by Article I, Section I, Paragraph XVI of the Georgia Constitution ("Paragraph XVI") protects against compelled breath tests. See *Olevik*, __ Ga. at __ (2) (c) (806 SE2d at 513-520). But, the right against self-incrimination under Paragraph XVI is not violated where the defendant voluntarily consents to the breath test rather than being compelled. See id. at __ (2) (c) (iii), (3) (b) (806 SE2d at 517-518, 523-524). And,

> whether a defendant is compelled to provide self-incriminating evidence in violation of Paragraph XVI is determined under the totality of the circumstances. Determining the voluntariness of (or lack of compulsion surrounding) a defendant's incriminating statement or act involves considerations similar to those employed in determining whether a defendant voluntarily consented to a search. We have said that the voluntariness of a consent to search is determined by such factors as the age of the accused, his education, his intelligence, the length of detention, whether the accused was advised of his constitutional rights, the prolonged nature of questioning, the use of physical punishment, and the psychological impact of all these factors on the accused. In determining voluntariness, no single factor is controlling.

12

(Citations and punctuation omitted.) Id. at __ (3) (b) (806 SE2d at 523).

Here, as discussed supra in Division 1 (a), the trial court committed no error in finding under the totality of the circumstances that MacMaster freely and voluntarily consented to the State-administered breath test. Accordingly, because MacMaster was not compelled to undergo the State-administered breath test, her right against self-incrimination under Paragraph XVI was not violated. See *Olevik*, __ Ga. at __ (3) (b) (806 SE2d at 523-524).

(c) MacMaster also contends that the trial court should have excluded her verbal response consenting to the State-administered breath test because her consent was obtained after she was in police custody but before she had been advised of her rights under *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966). As discussed supra in Division 1 (b), a defendant's Fifth Amendment right against self-incrimination is not implicated by a State-administered breath test. See *Scanlon*, 237 Ga. App. at 363-364 (1), (2). "Thus, the absence of *Miranda* warnings does not require suppression of [MacMaster's] consent to the breath test under federal law." Id. at 364 (1). Additionally, we have held in a whole court decision that "an arrestee is not, under Georgia constitutional or statutory law, entitled to *Miranda* warnings before deciding whether to submit to the State's request for an additional test of

13

breath, blood, or urine." (Emphasis omitted.) *State v. Coe*, 243 Ga. App. 232, 234 (2) (533 SE2d 104) (2000), overruled in part on other grounds by *Olevik*, __ Ga. at __ (2) (c) (iv), n. 11 (806 SE2d at 520, n. 11). See *Taylor v. State*, 337 Ga. App. 486, 494 (4) (a) (iii) (788 SE2d 97) (2016).

Although MacMaster, with the permission of this Court, filed a supplemental brief to address the Supreme Court's recent *Olevik* decision, she did not address in her brief whether or to what extent that decision might affect our ruling in *Coe* regarding the application of *Miranda* warnings under the Georgia Constitution. In the absence of any argument from MacMaster that we reconsider or overrule our decision in *Coe* as it pertains to *Miranda* warnings, we decline to address that issue here. See *Mitchell v. State*, 301 Ga. 563, 572 (4) (802 SE2d 217) (2017) (declining to reconsider precedent in absence of argument from appellant that it should be overruled). See also *Olevik*, __ Ga. at __(3) (a) (i), n. 13 (806 SE2d at 522, n. 13) ("To the extent Olevik argues that we should impose a *Miranda*-style prophylactic rule to protect suspects' Paragraph XVI rights (rights the scope of which, as we have explained, were well-established long before the Supreme Court's decision in *Miranda*), he does not point us to a single decision of this Court or any textual or

14

historical basis supporting such a step. In the absence of a more complete argument, we decline to address this issue.").

(d) MacMaster further argues that the trial court erred in denying her motion in limine to exclude the admission of her refusal to take the Alco-Sensor test. According to MacMaster, an Alco-Sensor test is a warrantless search of a suspect's breath, and she should be able to invoke her Fourth Amendment right to refuse to consent to such a search without having her refusal used against her at trial.

As previously noted, the administration of a breath test is a search under the Fourth Amendment. *Birchfield*, 136 SCt at 2173 (IV); *Kendrick*, 335 Ga. App. at 768. In *Mackey v. State*, 234 Ga. App. 554, 556 (507 SE2d 482) (1998), we held that "an individual should be able to invoke his Fourth Amendment rights without having his refusal used against him at trial." However, *Mackey* involved a defendant's refusal to consent to the warrantless search of a vehicle, and we pointed out that "[a] defendant's refusal to consent to a warrantless search of his vehicle or other property is quite a different issue" from "a defendant's refusal to submit to a blood or urine test for determining alcohol or drug content." Id. at 555-556. As we have emphasized, "[t]he case law interpreting implied consent laws demonstrates that the judiciary overwhelmingly sanctions the use of civil penalties and evidentiary consequences

15

against DUI suspects who refuse to comply." *Hynes v. State*, 341 Ga. App. 500, 508 (801 SE2d 306) (2017). See *Birchfield,* 136 SCt at 2185 (VI); *Olevik*, __ Ga. at __ (3) (a) (i) (806 SE2d at 521). Hence, we have held that the refusal to take a State-administered chemical test under Georgia's implied consent law is admissible at trial. See *Szopinski v. State*, 342 Ga. App. 647, 650 (1) (804 SE2d 657) (2017); *Brooks v. State*, 187 Ga. App. 194, 195 (1) (369 SE2d 801) (1988). We discern no reason why the same rule in favor of admission should not apply in the context of a defendant's refusal to take an Alco-Sensor preliminary breath test, which we have previously held is admissible as circumstantial evidence tending to show that the defendant was impaired. See *Korponai v. State*, 314 Ga. App. 710, 712 (3) (a) (725 SE2d 832) (2012); *Crusselle v. State*, 303 Ga. App. 879, 881 (1) (694 SE2d 707) (2010).

Moreover, MacMaster cannot demonstrate harm resulting from the alleged erroneous admission. Even error of constitutional magnitude can be held harmless, if "the State can prove beyond a reasonable doubt that the error did not contribute to the verdict," such as when the evidence is cumulative of other properly admitted evidence or the evidence of the defendant's guilt is overwhelming. (Citation and punctuation omitted.) *Stovall v. State*, 287 Ga. 415, 418 (3) (696 SE2d 633) (2010).

"Here, the direct evidence of [MacMaster's] guilt for the DUI per se charge was overwhelming. As to that charge, there was no dispute [MacMaster] was driving [her] vehicle; [MacMaster] admitted [she] had consumed alcohol that evening; and the breath tests showed [MacMaster's] BAC was substantially in excess of 0.08 grams." *Jones v. State*, 301 Ga. 544, 551 (3) (802 SE2d 234) (2017). Furthermore, the direct evidence of MacMaster's guilt of failure to maintain lane is overwhelming, as reflected by the dash-cam recording from the first deputy's patrol car clearly showing her driving infraction. See, e.g., *Moore v. State*, 242 Ga. App. 249, 251 (1) (a) (529 SE2d 381) (2000) (defendant's guilt was overwhelming, where evidence included video recording showing the armed robbery).

Accordingly, even if we were to assume for the sake of argument that the admission of MacMaster's refusal to take an Alco-Sensor test was constitutional error, it was harmless error that did not contribute to MacMaster's convictions of DUI per se and failure to maintain lane. See *Jones*, 301 Ga. at 551 (3). While it is a closer question whether admission of the refusal would have been harmful with respect to the jury's guilty verdict for DUI less safe, that issue is moot in light of the trial court's merger of that offense into MacMaster's DUI per se conviction for purposes of sentencing. See id.

2. MacMaster also contends that the trial court erred in denying her motion for new trial on the general grounds. See OCGA §§ 5-5-20;[3] 5-5-21.[4] In this regard, MacMaster contends that the trial court failed to exercise its discretion and weigh the evidence in deciding whether to grant a new trial. See *Walker v. State*, 292 Ga. 262, 264 (2) (737 SE2d 311) (2013) (OCGA §§ 5-5-20 and 5-5-21 "afford the trial court broad discretion to sit as a 'thirteenth juror' and weigh the evidence on a motion for new trial alleging these general grounds") (citation and punctuation omitted). We are unpersuaded.

Here, the trial court's order stated:

> The above-styled action came before the Court on April 24, 2016 for hearing of the Defendant's Motion for New Trial. The Court heard the arguments of counsel, and after consideration of the arguments, a review of the record, and a review of the applicable law, this Court HEREBY DENIES the Defendant's Motion on all grounds."

---

[3] OCGA § 5-5-20 provides: "In any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity, the judge presiding may grant a new trial before another jury."

[4] OCGA § 5-5-21 provides: "The presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding."

18

As our Supreme Court recently stated in a appeal involving a similar summary order denying a motion for new trial,

> Although the order did not explicitly state that the court was exercising its broad discretion . . . in deciding the motion, it is well established that this Court must presume that the trial judge knew the rule as to the necessity of exercising his discretion, and that he did exercise it. We can not assume, in the absence of positive evidence to the contrary, that the judge knowingly declined to exercise his discretion. Thus, where a trial judge ruling on a new trial motion enters an order that, without more, recites that the new trial is refused or denied, this will be taken to mean that the judge has in the exercise of his discretion approved the verdict.

(Citations and punctuation omitted.) *Butts v. State*, 297 Ga. 766, 771-772 (3) (778 SE2d 205) (2015). Consequently, MacMaster's claim of error is without merit.

*Judgment affirmed. McMillian and Mercier, JJ., concur*.