**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**August 15, 2019**

# In the Court of Appeals of Georgia

A19A0787. FOFANAH v. THE STATE.

PER CURIAM.

A jury found Sheikh Abusai Fofanah guilty of driving under the influence (per se), driving under the influence (less safe), and failure to maintain lane.[1] On appeal following the denial of his motion for new trial, Fofanah argues that the trial court erred by denying his motion to suppress and admitting the results of his breath test because (1) his consent to submit to the breath test was not preceded by a *Miranda*[2] advisement; and (2) the implied consent advisement was misleading because it stated that Fofanah's refusal to submit to the breath test could be used against him at trial. For the reasons set forth below, we vacate the trial court's order on the motion to

---

[1] The trial court merged Fofanah's DUI convictions for sentencing.

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

suppress and remand the case for the trial court to consider Fofanah's suppression argument in light of recent Supreme Court precedent.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant is no longer entitled to the presumption of innocence." *Dickson v. State*, 339 Ga. App. 500, 501 (1) (793 SE2d 663) (2016) (citation and punctuation omitted). So viewed, the record shows that in March 2014, a concerned citizen called the police after allegedly observing a person driving erratically. A deputy who was dispatched to the area observed Fofanah failing to maintain his lane of travel. The deputy initiated a traffic stop. After making contact with Fofanah, the deputy smelled a strong odor of alcohol emanating from inside the car. The deputy asked Fofanah if he had been drinking. Fofanah replied that he had consumed a drink containing alcohol earlier.

The deputy asked Fofanah to exit the vehicle. While exiting the vehicle, Fofanah held onto the vehicle for support and "stumbled a bit." A second officer arrived on the scene and performed the horizontal gaze nystagmus ("HGN") test on Fofanah. Based on his observations of Fofanah, including Fofanah's failure to maintain lane, the odor of alcohol, Fofanah's admission that he had been drinking, his unsteadiness on his feet and the results of the HGN test, the deputy arrested Fofanah.

2

The deputy read to Fofanah the implied consent notice for suspects 21 and over, asking if he would submit to a state-administered test of his breath. See OCGA § 40-5-67.1 (b) (2) (2014). Fofanah answered affirmatively. The officers transported Fofanah to a detention center to perform the breath test on an Intoxilyzer 5000 machine. Fofanah's breath test registered an alcohol concentration of .216 grams, which was above the legal limit of .08 grams. See OCGA § 40-6-391 (a) (5).

Prior to trial, Fofanah filed a motion to suppress the results from the breath test. He argued, among other things, that he did not validly consent to the breath test because the officers failed to give him a *Miranda* warning and because the implied consent notice unduly influenced his decision by informing him that his consent was required and that he faced "dire consequences" if he refused. The trial court denied his motion to suppress the breath test results. The trial court, in considering the totality of the circumstances, found that Fofanah voluntarily consented to the breath test. Specifically, the court noted that Fofanah comprehended the officers' instructions and was not incoherent in his responses, the officers were not threatening in any way, and the officers did not intimidate or use force against Fofanah in order to gain his consent.

Following his conviction, Fofanah filed a motion for new trial, which the trial court denied. This appeal followed.

1. Fofanah argues that the trial court should have excluded the results of the breath test because the officers did not give him a *Miranda* advisement prior to seeking his consent for the test. He notes that he was under arrest and in custody at the time the officers requested his consent.

"In reviewing a trial court's ruling on a motion to suppress, [an appellate court] must construe the record in the light most favorable to the factual findings and judgment of the trial court and accept the trial court's findings of disputed facts unless they are clearly erroneous." *State v. Turner*, 304 Ga. 356 (818 SE2d 589) (2018) (citations omitted). However, "the trial court's application of the law to undisputed facts is subject to de novo review." *State v. Clay*, 339 Ga. App. 473 (793 SE2d 636) (2016) (citation and punctuation omitted).

"The scope of the right against self-incrimination protected by the Fifth Amendment to the United States Constitution is limited to evidence of a testimonial or communicative nature." *MacMaster v. State*, 344 Ga. App. 222, 228 (1) (b) (809 SE2d 478) (2018) (citation and punctuation omitted). To be testimonial, an accused's

communication must relate a factual assertion or disclose information. Id. "A

defendant's verbal consent to take a breath test and the results obtained from such a

test are not evidence of a testimonial or communicative nature and thus do not

implicate the right against self-incrimination under the Fifth Amendment." Id.

(citation omitted). Accordingly, because "a defendant's Fifth Amendment right

against self-incrimination is not implicated by a State-administered breath test[,]" "the

absence of *Miranda* warnings does not require suppression of [Fofanah's] consent to

the breath test under federal law." Id. at 229 (1) (c) (citation and punctuation

omitted).

The Georgia Constitution similarly provides a right against self-incrimination.

Ga. Const. of 1983, Art. I, Sec. I, Par. XVI ("Paragraph XVI").[3] In interpreting this

provision, our Supreme Court has held that Paragraph XVI protects a broader range

of conduct than the Fifth Amendment, and applies to compelled acts, not merely

testimony. See *Olevik v. State*, 302 Ga. 228, 239-241 (2) (c) (ii) (806 SE2d 505)

(2017). "Breathing deep lung air into a breathalyzer is a self-incriminating act that

Paragraph XVI prevents the State from compelling." Id. at 243-244 (2) (c) (iii). The

___

[3] Paragraph XVI of the Georgia Constitution provides that "[n]o person shall be compelled to give testimony tending in any manner to be self-incriminating." Ga. Const. of 1983, Art. I, Sec. I, Par. XVI.

5

Court explained that "obtaining this deep lung breath requires the cooperation of the person being tested because a suspect must blow deeply into a breathalyzer for several seconds in order to produce an adequate sample." Id. at 243 (2) (c) (iii) (citation omitted).

However, "the right against self-incrimination under Paragraph XVI is not violated where the defendant voluntarily consents to the breath test rather than being compelled." *MacMaster*, supra at 228 (1) (b) (citation omitted). We have held that "an arrestee is not, under Georgia constitutional or statutory law, entitled to *Miranda* warnings before deciding whether to submit to the State's request for [a] test of breath, blood, or urine." Id. at 229 (1) (c) (citing *State v. Coe*, 243 Ga. App. 232, 234 (2) (533 SE2d 104) (2000), overruled in part on other grounds by *Olevik*, supra at 246 (2) (c) (iv), n.11). Additionally, our Supreme Court recently held that, based on the history and context of Georgia constitutional provisions, neither Georgia law nor the Georgia Constitution requires that a suspect in custody receive a *Miranda* warning before being asked if he or she will submit to a breath test. See *State v. Turnquest*, 305 Ga. 758, 760-761 (3) (827 SE2d 865) (2019). Thus, the officers were not required to give Fofanah a *Miranda* warning before asking him if he would submit to the breath test, and the trial court did not err in that regard.

6

2. (a) Fofanah argues that the implied consent notice the deputy read to him was materially and substantially misleading because it stated that if he refused to submit to the breath test, then his refusal could be used against him at trial. He contends that this information was inaccurate because his refusal could not be used against him at trial, and the inaccurate information would induce a person to submit to a state-administered breath test. Therefore, he asserts, his breath test results should have been excluded at trial.

At the time of Fofanah's arrest, the implied consent notice provided that: "Georgia law requires you to submit to state administered chemical tests of your blood, breath, urine, or other bodily substances for the purpose of determining if you are under the influence of alcohol or drugs. . . . Your refusal to submit to the required testing may be offered into evidence against you at trial. . . ." OCGA § 40-5-67.1 (b) (2) (2014). As noted above, Paragraph XVI of Georgia's Constitution prevents the State from compelling a person to breathe deeply into a breathalyzer or breath analysis machine because it is a self-incriminating act. See *Olevik*, supra at 241-244 (2) (c) (iii). For this reason, the admission of evidence at a criminal trial that a defendant refused to submit to a breath test violates Georgia's Constitution. See *Elliott v. State*, 305 Ga. 179, 209 (IV), 223 (IV) (E) (824 SE2d 265) (2019).

7

In his motion to suppress, Fofanah argued that his consent to submit to the breath test was not voluntary, based partly on the language of the implied consent notice. In *Olevik*, supra, the Supreme Court rejected the argument that the notice language was unconstitutionally coercive (as to the United States and Georgia constitutions). Id. at 246-250 (3) (a). Notably, in 2015, when the trial court ruled on Fofanah's motion to suppress, it did not have the benefit of the Supreme Court's decision in *Olevik* (2017). In any event, Fofanah's challenge to the language of the implied consent notice as unconstitutionally coercive fails. See *Olevik*, supra (the implied consent notice, standing alone, is not per se coercive); *MacMaster*, supra at 227 (1) (a). Thus, this argument presents no basis for reversal.

(b) Fofanah also raised an "as-applied" challenge to the implied consent notice, asserting that his consent was not voluntary because he merely yielded to the authority of the three police officers present after he was placed in custody, and his "language issues limited his comprehension" of the implied consent notice.

The trial court conducted a "totality of the circumstances analysis," assessing the impact of various factors on Fofanah's consent. See *Olevik*, 302 Ga. at 248 (3) (a) (i) ("[E]valuating whether self-incrimination was compelled depends on the totality of the circumstances[.]"); see generally *Dean v. State*, 250 Ga. 77, 80 (2) (a) (295

8

SE2d 306) (1982) (setting out various psychological and other factors to be considered in determining the voluntariness of consent to search). However, in *Olevik* the Court stated that another significant factor in the inquiry is whether a deceptive police practice caused a defendant to incriminate himself. Id. at 251 (3) (b). The failure of the police to advise the accused of his rights is a factor to be evaluated in assessing the voluntariness of an accused's consent. Id. at 251-252 (3) (b). In the instant case, the trial court did not consider the deficiency in the implied consent notice as a factor in its totality of the circumstances analysis (understandably, given the binding case law at the time). See id. at 252. See also *Elliott*, supra at 223 (IV) (E) ("We recognize that our holding here may affect a totality-of-the-circumstances inquiry into whether a defendant voluntarily submitted to a breath test where the State first threatened that, if she refused, that would be evidence against her at trial.").

The Supreme Court recently vacated a trial court's ruling on a motion to suppress and remanded the case because the defendant's arguments implicated its decision in *Elliott*, which had not yet been decided when the trial court ruled on the motion. See *Turnquest*, supra at 775-776 (5). We similarly vacate the trial court's order and remand this case so that the trial court may consider Fofanah's suppression argument in light of *Olevik* and *Elliott*.

9

*Judgment vacated and case remanded. Division Per Curiam. All Judges concur.*